**Arrine Hollis ALMEIDA**

v.

**TOWN OF NORTH PROVIDENCE et al.**

**No. 81-28-Appeal.**

Supreme Court of Rhode Island.

Dec. 15, 1983.

Robert S. Ciresi, Town Sol., J. Renn Olenn, Providence, for defendants.

Stephen P. Nugent, Nugent & Nugent, Vincent T. Cannon, Decof & Grimm, Providence, for plaintiff.

## OPINION

MURRAY, Justice.

This case came before the Court on an order to show cause why the plaintiffs' appeal should not be dismissed. Due to the significant public interest in providing clear guidance to municipalities and their police officers when faced with similar circumstances, we have decided to issue a full opinion.

This case involves a wrongful-death action brought by plaintiffs, the mother and all other beneficiaries of the decedent, Maria Hollis, against the town of North Providence and one of its police officers, William J. DeLuca. Upon the motion of both defendants, the trial justice directed a verdict against all plaintiffs for their failure to prove causation. The plaintiffs appeal this ruling as well as that of the trial justice in excluding certain evidence concerning police regulations.

The relevant facts are not in dispute. At approximately 12:05 a.m. on February 27, 1975, a vehicle in which Maria Hollis was a passenger collided with another automobile and struck a telephone pole. As a result of these collisions, plaintiff-Arrine Almeida's daughter was killed.

At trial, Officer DeLuca testified that in the late evening of February 26, 1975, at nearly 11:58, he noticed a 1968 Pontiac with Massachusetts plates turn onto Linwood Avenue in North Providence. He remarked that the car's occupants were "looking around" and appeared to be lost. Believing the occupants to be in need of some assistance, DeLuca turned on his flashing blue lights and beeped his horn in order to stop the other car. The car did not stop immediately so DeLuca activated his siren. Following this action, he stated, the car came to a complete halt at the intersection of Hillside and Gentian Avenues. At this time, no violation of any town ordinance had occurred.

Once the Pontiac had stopped, DeLuca halted his police cruiser and reported his location to his control base. As he stepped out of his police car, DeLuca further testified that the operator of the Pontiac "hit the gas and took off" through the intersection.[1] DeLuca stated that this abrupt departure tactic by the Pontiac's operator was a violation of one section of the reckless-driving statute, eluding a police officer. For this reason and because of his concern generated by his previous observations of the Pontiac, DeLuca began to pursue this vehicle.

DeLuca immediately radioed his control base that he was in pursuit of the Pontiac. Due to a broken intercity radio transmitter, he was forced to contact the Smithfield police department to inform the Providence police department that he was pursuing the Pontiac into the city of Providence.

DeLuca reported that the pursued vehicle drove across Gentian Avenue onto Wanskuck Avenue and then made a right turn onto Admiral Street. He then chased the Pontiac down Admiral Street for two to three miles. He stated that his speed reached eighty miles per hour and that he was not gaining any ground on the fleeing vehicle. The Pontiac drove through the red light at the intersection of Admiral Street and Douglas Avenue. DeLuca testified that the Pontiac swerved to avoid striking another car; bounced off Joseph Conway's car which was parked at the light; and struck a telephone pole, snapping it in two.

Conway testified that he saw the Pontiac drive through the red light, sideswipe his car, and then accelerate past him into the telephone pole. He stated that the accident occurred at 12:05.

Officer DeLuca testified that he hit his brakes and skidded into Conway's car. DeLuca immediately requested additional po-

---

1. Although unknown to DeLuca at this time, it was later discovered by the North Providence police department that this vehicle had been stolen.

lice assistance and then ran to the Pontiac to aid its occupants. He noticed the decedent lying in front of the car.

Doctor William Sturner, chief medical examiner of the State of Rhode Island, performed an external examination of the decedent. He opined with a reasonable degree of medical certainty that the cause of Maria Hollis's death was the loss of blood due to multiple injuries she sustained in the car accident. Upon these facts, defendants moved for and were granted a directed verdict by the trial justice.

■ In reviewing the trial justice's grant of defendants' motion for directed verdicts, we must examine the evidence in the light most favorable to plaintiffs, must draw all reasonable inferences in support of plaintiffs' position, but must neither weigh the evidence nor pass on the credibility of the witnesses. *DaVinci Creations, Inc. v. Nu-Frame Co.,* R.I., 418 A.2d 851, 853 (1980); *Carnevale v. Smith,* R.I., 404 A.2d 836, 838 (1979).

Having done so, we fully agree that proximate cause was not established by plaintiffs below and that, therefore, the direction of verdicts against them was entirely proper. Even assuming that DeLuca's conduct was negligent under the circumstances (as the trial justice did), we hold that the acts and conduct of Thomas Watson, the operator of the 1968 Pontiac, were such that they broke the initial chain of causation and became the sole proximate cause of Maria Hollis's death.

■ Careful review of our most recent decisions in this area mandates this result. "The doctrine of independent intervening cause recognizes that there may be concurrent proximate causes that contribute to an individual's injuries or death and that a person's misconduct is not always rendered remote in the causal sense because of the intervening of a second cause. If the independent or intervening cause is *reasonably foreseeable,* the causal connection remains unbroken." (Emphasis added.) *State v. Dionne,* R.I., 442 A.2d 876, 887 (1982);

*S.M.S. Sales Co. v. New England Motor Freight, Inc.,* 115 R.I. 43, 47, 340 A.2d 125, 127 (1975). If, however, the intervening cause was not reasonably foreseeable, the intervening or secondary act becomes the sole proximate cause of the plaintiff's injuries.

■ In this context, defendant DeLuca's act in stopping the 1968 Pontiac in which the decedent was a passenger was not the proximate cause of her death. He could not reasonably foresee that, after having brought the Pontiac to a complete stop simply to render assistance, its driver would speed away from him in a reckless manner and trigger an eighty-mile-per-hour high-speed chase down Admiral Street that would result in Maria Hollis's death.

Watson's flight from defendant DeLuca constituted a blatant disregard for both his own life and those of his passengers and other motorists which could not reasonably have been foreseen given the fact that he had not violated any laws or ordinances while in DeLuca's presence. His thoughtless and wild conduct supervened whatever negligence DeLuca may have committed and became the sole legal cause of Maria Hollis's death. Since we hold that defendant DeLuca's conduct was not a proximate cause of Maria Hollis's death, his employer, the town of North Providence, was also absolved from any liability for her death as a matter of law.

We have considered the plaintiffs' other arguments for reversal and find them to be without merit.

The plaintiffs' appeal is denied and dismissed. The judgment appealed from is affirmed, and the case is remanded to the Superior Court.