Mary SEIDE

v.

STATE of Rhode Island et al.

No. 2003–521–Appeal.

Supreme Court of Rhode Island.

May 16, 2005.

Joseph F. Dugan, for Plaintiff.

Kathleen M. Daniels, Stephen P. Cooney, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

GOLDBERG, Justice.

In the early morning hours of April 5, 1994, the plaintiff, Mary Seide (Seide or plaintiff), and two friends were driving home to Boston after spending the weekend in New York City celebrating Easter with her family and her church. As Seide slept in the passenger seat of her vehicle, the impact of a collision with a stolen flatbed tow truck jolted her awake. This car wreck was the final act in a sustained, high-speed police pursuit spanning three communities and involving several police departments. The force of the collision threw Seide into the windshield, causing her seatbelt to snap; she experienced pain throughout her body, except for her right leg, which was numb. She repeatedly vomited blood. The events leading up to this collision are the subject of this appeal.

In the Riverside area of East Providence, around midnight, a flatbed tow truck (truck) was stolen by David D'Angelo (D'Angelo) from a local business, Jerry's Chevron. As the theft was broadcast by the dispatcher for the East Providence Police Department, Detective Diogo Mello (Officer Mello) positioned his cruiser on the Taunton Avenue on-ramp to Interstate 195 (Route 195). He observed a flatbed tow truck, matching the description of the stolen vehicle, traveling west on Route 195. As Officer Mello followed the truck, radio dispatch confirmed that it was the stolen vehicle. When additional police cruisers from the East Providence and Providence Police Departments joined Officer Mello, the officers activated their emergency lights and sirens. Thus began a high-speed pursuit that lasted over thirty minutes. The chase culminated in a caravan of cruisers trailing D'Angelo on Interstate 95 (Route 95 or interstate) heading south in the northbound lanes and ended when the operator of the stolen vehicle drove around a hastily erected Rhode Island State Police (state police) roadblock and

smashed into Mary Seide's car.[1]

This case came before the Supreme Court for oral argument on February 3, 2005, on appeal by plaintiff from a grant of judgment as a matter of law in favor of defendants: the State of Rhode Island; the Rhode Island State Police and state police officers Captain Gary Treml and Corporal Ernest Quarry; the City of East Providence and its treasurer; and East Providence police officers Detective Diogo Mello and Patrolman Robert Warzycha (collectively defendants). For the reasons set forth herein, the appeal is sustained and the judgment is vacated.

■ A police officers decision to engage in a high-speed pursuit of a fleeing suspect is discretionary. *See, e.g., Haynes v. Hamilton County,* 883 S.W.2d 606, 611 (Tenn.1994) (holding officers pursuit decisions subject to reasonableness analysis). Sadly, errors in judgment during the chase or the officers failure to break it off potentially pose horrific consequences to the public. *See* Geoffrey P. Alpert et al., *The Constitutional Implications of High–Speed Police Pursuits Under a Substantive Due Process Analysis: Homeward Through the Haze,* 27 U. Mem. L. Rev. 599, 600–01 (1997) (citing data from studies examining police pursuits); *see, e.g., Haynes,* 883 S.W.2d at 611 & nn. 2–3 (discussing risks posed by high-speed pursuits and other jurisdictions' policies). Every year, hundreds of high-speed police pursuits result in death or serious bodily injury to innocent third parties from collisions with fleeing suspects or the officers in pursuit. Alpert, 27 U. Mem. L. Rev. at 600. "The number of deaths resulting from high-speed pursuits far exceeds the number of deaths caused each year by any other police activity." *Id.* In recognition of this risk to the public, the current trend among jurisdictions is to hold that a police officer and/or the officer's employer owe a duty of care to an innocent third party who suffers injuries in a collision with a fleeing suspect. *Day v. State,* 980 P.2d 1171, 1177 (Utah 1999).

In this state, an officer engaged "in the pursuit of an alleged violator of the law" is characterized as a driver of an "emergency vehicle" and statutorily privileged to proceed through a red light or a stop sign; to exceed the speed limit, "so long as he or she does not endanger life or property;" and to disregard one-way designations. General Laws 1956 §§ 31–12–6(a) and 31–12–7(4). However, every police department in this state is legislatively mandated to adopt a high-speed pursuit policy and to submit the policy to the Attorney General for inspection by the public. Section 31–12–6(b). The driver of an emergency vehicle is responsible for the consequences of his or her "reckless disregard for the safety of others." Section 31–12–9.

## Facts and Travel

On March 27, 1997, plaintiff filed a complaint in Superior Court seeking damages

---

1. D'Angelo entered a plea of *nolo contendere* to a five-count information charging him with: (1) leaving the scene of an accident resulting in injury or death, for which he was ordered to serve one year of a five-year sentence, with the remaining years suspended and probation commencing on release; (2) leaving the scene of an accident resulting in injury or death, for which he received five years suspended sentence and five years probation consecutive with each count; (3) leaving the scene of an accident resulting in injury or death, for which he received five years suspended sentence and five years probation consecutive with each count; (4) eluding the police, first offense, for which he received a one-year suspended sentence and one year of probation consecutive with each count; and (5) resisting arrest, for which he received a one-year suspended sentence and one year of probation consecutive with each count.

from several defendants [2] for injuries sustained when her vehicle was struck by D'Angelo. The plaintiff alleged that defendants proximately caused her injuries by their negligence in failing to abandon the chase and failing to adopt and comply with a reasonable police pursuit policy.

At trial, Officer Mello testified that, when he first saw the stolen truck on Route 195 heading toward Providence, he drove behind it without activating his lights or siren. He noted that the truck traveled "[r]ight within the speed limit" and was not driven in an unusual manner. Thereafter, two other police cruisers appeared on the scene—one driven by East Providence Patrolman Warzycha (Officer Warzycha) and a cruiser from the Providence Police Department. Officer Mello described their attempt to "box" the truck by positioning a cruiser directly at the front, rear, and alongside the vehicle. The officers activated their emergency lights and sirens, and Officer Mello, while traveling alongside the truck, motioned to the driver to pull over. According to Officer Mello, D'Angelo swerved toward him, and he barely avoided a collision with the Jersey barrier. Officer Mello dropped back to follow the truck.

Corporal Ernest Quarry of the state police (Corporal Quarry) recalled that when the truck entered Route 95 south, in the area of Rhode Island Hospital, he and his partner, Captain Gary Treml, joined the pursuit in their cruiser. The truck exited Route 95 at Eddy Street and traveled through downtown Providence at "no more than forty miles [per] hour" but did not heed stop signs or red lights. Corporal Quarry described the truck as "traveling at a high rate of speed on Allens Avenue and weaving in an attempt to elude us."

The record discloses that the truck reentered Route 195 west, then Route 95 north, and exited at the Broadway exit. The truck then reentered Route 95 north, and the officers again attempted to "box" in the vehicle. The police cars continued to pursue the truck as it exited Route 95 heading toward Canal Street and then to North Main Street. In his police statement, Officer Mello reported that the truck, while traveling between sixty and seventy miles per hour, headed toward Pawtucket. Officer Mello recalled that at least three cruisers pursued the stolen vehicle through Providence while the driver swerved at the police cars, drove over sidewalks, and struck "a small tree or sign or something" off the road.

The chase escalated. With at least three police cruisers in hot pursuit, the suspect reentered Route 95 at the State Offices exit ramp and traveled south in the northbound lane through Providence and into Cranston. Although he reported that civilian traffic was "light to nonexistent," Officer Mello concluded that the safety of the police officers was compromised. The stolen truck proceeded south in the northbound lane of Route 95 accompanied by a caravan of police vehicles. Corporal Quarry testified that the truck reached speeds of approximately ninety miles per hour. Officer Mello testified that, during this leg of the pursuit, he positioned his cruiser to the left of the truck, such that his emergency lights were visible to oncoming traffic. The officers repeated attempts to "box" in the truck failed. At this point, as the stolen vehicle was barreling down Route 95 in the wrong direction, Lieutenant Barlow of the East Providence Police Department ordered his officers to termi-

**2.** Although named as defendants in the original complaint, the City of Providence and its treasurer, the City of Pawtucket and its treasurer, and Jerry's Chevron are not before this Court on appeal.

nate their involvement in the pursuit. In response to this order, Officer Warzycha was able to exit the highway, but Officer Mello slowed down, kept his emergency lights activated, and continued on the highway.

The state police set up a makeshift roadblock on the interstate at Route 37 by positioning a state police cruiser, with its lights activated, across the highway, blocking the lanes of travel. Four lanes of traffic were halted directly behind the cruiser. Undeterred by the roadblock, the driver of the stolen truck swerved around the cruiser and, Seide alleges, crashed into plaintiffs car, which was stopped behind the roadblock. Corporal Quarry estimated that plaintiffs vehicle was approximately 100 to 150 feet behind the roadblock when it was struck.

Corporal Quarry explained that he considered the pursuit to be "dangerous" and that he could have terminated his involvement in the chase but elected not to do so. Corporal Quarry was convinced that it was in the officers "best interests" to continue the pursuit because D'Angelo was "driving erratically," and once the truck entered the highway driving in the wrong direction, "D'Angelo[ ] took all of the discretion and judgment away from us * * *. We had to chase the vehicle." [3]

The plaintiff testified that Nelson Guy, a friend, was driving her car, and she was asleep in the passenger seat. She suffered serious injuries, was given medical attention at the scene, and was taken by ambulance to Rhode Island Hospital. Seide described the injuries she suffered, the activities she could no longer engage in, and how the accident affected her life.

At the close of plaintiffs case, the trial justice granted defendants motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The trial justice concluded that defendants were immune from suit under the Public Duty Doctrine and further, that plaintiff failed to produce any evidence tending to show that defendants conduct was the proximate cause of the collision. The trial justice found that plaintiff failed to prove that the conduct of the officers caused D'Angelo to drive on Route 95 in the wrong direction or how the collision occurred.

On appeal, plaintiff argues that the trial court erred in granting defendants motion for judgment as a matter of law. The plaintiff asserts that the Public Duty Doctrine does not shield defendants from liability arising from the police officers reckless conduct during a high-speed chase. Also, plaintiff contends that judgment as a matter of law on the element of proximate cause was granted improperly.

### Standard of Review

 " 'This Court applies the same standards as the trial court when reviewing the decision of a trial justice on a motion for [judgment as a matter of law].' " *Francis v. American Bankers Life Assurance Company of Florida,* 861 A.2d 1040, 1045 (R.I.2004). When passing on a motion for judgment as a matter of law, the trial justice:

> " 'considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of

**3.** At trial, the East Providence Police Departments pursuit policy was entered as a full

exhibit without objection.

the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.' " *Mellor v. O'Connor*, 712 A.2d 375, 377 (R.I.1998).

■ This case also presents questions of statutory interpretation, which this Court reviews *de novo*. *Mottola v. Cirello*, 789 A.2d 421, 423 (R.I.2002). It is well settled that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.' " *Id.* "We presume that the Legislature intended every word, sentence, or provision to serve some purpose and have some force and effect, * * * but we will not interpret a statute in a manner that would defeat the underlying purpose of the enactment." *Pier House Inn, Inc. v. 421 Corporation, Inc.*, 812 A.2d 799, 804 (R.I.2002). On appeal, plaintiff argues that this case is not governed by the Public Duty Doctrine. Rather, she contends that § 31–12–9 is the controlling statute and defeats defendants' contention that they are immune from liability.

4. General Laws 1956 § 31–12–6(a) provides:

"The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an alleged violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in § 31–12–7, but subject to the conditions stated in this section and in §§ 31–12–8 and 31–12–9."

5. The privileges granted to a driver of an emergency vehicle are set forth in § 31–12–7, which provides:

## Sovereign Immunity

■ When a police officer pursues a person suspected of violating the law, § 31–12–6(a)[4] affords the officer, as the driver of an authorized emergency vehicle, the privilege of disregarding many traffic laws.[5] However, § 31–12–9 also provides that these privileges are not without limitation, including the "duty to drive with due regard for the safety of all persons." This duty of care is set forth in § 31–12–9:

"**Due care by emergency vehicles.**— The provisions of this chapter shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall the provisions protect the driver from the consequences of the drivers reckless disregard for the safety of others."

■ The plaintiff relies upon *Roberts v. Kettelle*, 116 R.I. 283, 356 A.2d 207 (1976), the only case in which this Court had occasion to consider § 31–12–9, to support her contention that the applicable standard of care for determining defendants' liability is "reckless disregard for the safety of others." In *Roberts*, an automobile collision on Route 95 with a state police cruiser left one passenger injured and the other dead. *Roberts*, 116 R.I. at 286, 356 A.2d at 211. Money damages were awarded against the officer, and the officer appealed, arguing that the trial justice erred in

"**Privileges allowed emergency vehicles.**—The driver of an authorized emergency vehicle may:

"(1) Park or stand, irrespective of the provisions of any law;

"(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

"(3) Exceed the prima facie speed limits so long as he or she does not endanger life or property;

"(4) Disregard regulations governing direction of movement or turning in specified directions."

denying his motion for directed verdict.[6] *Id.* at 288–90, 356 A.2d at 211–12. The defendant argued that liability against him could not be based upon a finding of negligence for driving slower than the minimum allowable speed because § 31–12–6 provides a *per se* exemption from vehicle speed laws when responding to an emergency while displaying emergency lights.[7] *Roberts*, 116 R.I. at 289–90, 356 A.2d at 212.

This Court determined that § 31–12–6 affords some legal protection to a driver of an emergency vehicle, but it is not without limitation; the operator's conduct is nonetheless restrained by § 31–12–9. *Roberts*, 116 R.I. at 291–92, 356 A.2d at 213–14. "[I]f it is found that an emergency exists, the finder of fact must focus its investigation on the question of whether the driver's conduct in the emergency constitutes a reckless disregard for the safety of others."[8] *Id.* at 291, 356 A.2d at 213. We concluded that "where the driver of an authorized emergency vehicle, when responding to an emergency call, operates his vehicle in such a manner as to demonstrate a heedless indifference to the consequences of his action, the finder of fact must conclude that he has exhibited a reckless disregard for the safety of others and thus withhold the privileges extended to him under § 31–12–6." *Roberts*, 116 R.I. at 292, 356 A.2d at 213–14. We af-

firmed the denial of the motion for directed verdict because the evidence, when viewed in the light most favorable to plaintiffs, reasonably supported the conclusion that no emergency existed and that the officer was reckless. *Id.* at 293–94, 356 A.2d at 214. *Roberts* was decided before this Court adopted the Public Duty Doctrine.

This is our first occasion to determine whether § 31–12–9 continues to constitute a legislative waiver of immunity under the Public Duty Doctrine. The Rhode Island Tort Claims Act, G.L. 1956 chapter 31 of title 9 (act), is a statutory waiver of both state and municipal sovereign immunity. The act "permits individuals to sue governmental units in the same manner as private individuals for injuries caused by the negligence of state or local employees." *Catone v. Medberry*, 555 A.2d 328, 330 (R.I.1989) (citing § 9–31–1). Despite the acts broad waiver of sovereign immunity,[9] the judicially crafted Public Duty Doctrine serves to restrict tort liability for the state and its municipalities for governmental functions, albeit with certain exceptions. *See Calhoun v. City of Providence*, 120 R.I. 619, 625, 629, 390 A.2d 350, 353, 355 (1978) (rejecting contention that the Legislature intended § 9–31–1 "to operate so as to impose liability upon the state for any and all acts or omissions of

---

6. " 'The standard for granting a motion for judgment as a matter of law is the same as that applicable to its precursor, a motion for a directed verdict.' " *Martinelli v. Hopkins*, 787 A.2d 1158, 1165 (R.I.2001).

7. We note that the defendant-officer in *Roberts v. Kettelle*, 116 R.I. 283, 356 A.2d 207 (1976), did not argue that the Public Duty Doctrine protected him from tort liability.

8. "Conversely, if no emergency is found to exist, the driver's conduct is to be scrutinized under standards applicable to all other driv-

ers, that is, whether he was negligent." *Roberts*, 116 R.I. at 291, 356 A.2d at 213.

9. General Laws 1956 § 9–31–1 provides, in pertinent part:

"**Tort liability of state.** The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall * * * hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this chapter."

its employees and officers which might cause injury to persons").

 In passing upon claimed immunity arising from an act of the General Assembly or the Public Duty Doctrine, we presume that "[t]he Legislature did not intend to deprive the [s]tate of any sovereign power 'unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language.'" *Torres v. Damicis*, 853 A.2d 1233, 1237 (R.I.2004) (quoting *Graff v. Motta*, 695 A.2d 486, 489 (R.I.1997)). When ascertaining whether a waiver of sovereign immunity exists in a statute, "the language of the statute must be closely parsed and strictly construed." *Id.* (quoting *Reagan Construction Corp. v. Mayer*, 712 A.2d 372, 373 (R.I.1998)).

 Unquestionably, § 31–12–9 is an express waiver of an officer's immunity from suit because it provides that the driver of an emergency vehicle is not protected "from the consequences of [his or her] reckless disregard for the safety of others." Faced with this clear and unambiguous language, the driver of an emergency vehicle, or the driver's governmental employer, is not immune from liability for the consequences of his or her reckless behavior. To hold otherwise would defeat this explicit statutory pronouncement. Simply put, the driver of an emergency vehicle and his or her state or municipal employer are liable for the foreseeable consequences of a high-speed pursuit initiated, conducted, or continued in reckless disregard for the safety of others.[10] The Public Duty Doctrine will not shield these defendants from liability for injuries proximately arising from their reckless conduct or in circumstances in which no real emergency

exists. We hold that the trial justice improperly granted judgment as a matter of law on a finding that defendants were entitled to sovereign immunity under the Public Duty Doctrine.

## Proximate Cause

 To survive a motion for judgment as a matter of law in a cause of action alleging defendants acted in reckless disregard for the safety of others, the trial justice must find sufficient evidence upon which reasonable persons could conclude that the officer was not confronted with a true emergency or that he or she conducted the pursuit in reckless disregard for the safety of others and, but for this reckless conduct, injury to plaintiff would not have occurred. *See Geloso v. Kenny*, 812 A.2d 814, 818 (R.I.2002) (defining proximate cause); *Saber v. Dan Angelone Chevrolet, Inc.*, 811 A.2d 644, 648 (R.I.2002) (reciting standard for granting judgment as a matter of law).

 "[T]he existence and the extent of a duty of care are questions of law * * * [, but] whether such duty has been breached and whether proximate cause [exists] are the questions for the factfinder." *Rodrigues v. Miriam Hospital*, 623 A.2d 456, 461 (R.I.1993) (quoting *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 37 (R.I. 1989)). Although proximate cause may not be established by conjecture or speculation, "proximate cause can be established by circumstantial evidence, and specific direct evidence of * * * proximate cause is not always necessary.'" *Martinelli v. Hopkins*, 787 A.2d 1158, 1169 (R.I.2001). When inference is employed to establish causation, "[p]roof by inference need not

---

**10.** We note that § 31–12–9 creates a statutory "duty to drive with due regard for the safety of all persons." Although this duty extends to "all persons," the statute waives immunity only for "the consequences of the driver's reckless disregard for the safety of others" who are not involved in the pursuit. *Id.*

exclude every other possible cause, \* \* \* it must be based on reasonable inferences drawn from the facts in evidence.'" *Id.* (quoting *McLaughlin v. Moura*, 754 A.2d 95, 98 (R.I.2000)).

 The trial justice erred in finding that plaintiff failed to produce any evidence demonstrating that the high-speed pursuit was the proximate cause of the collision. At trial, plaintiff presented evidence that, when Officer Mello first encountered the truck, D'Angelo was suspected of stealing a truck, a property crime, and that D'Angelo drove within the speed limit and not in a reckless manner. Thus, the extent to which Officer Mello was confronted with a real emergency was debatable. The evidence demonstrated that D'Angelo began to drive dangerously only when the police activated their lights and sirens and directed him to pull over. He refused. The plaintiff produced evidence that defendants engaged in what a jury could find was a lengthy, dangerous, high-speed pursuit with a fleeing car thief, who disregarded traffic signals, drove through downtown Providence erratically, swerved at police cruisers, struck objects, repeatedly exited and reentered major highways, reached speeds of approximately ninety miles per hour, and endangered the safety of the police officers and the driving public. This high-speed chase culminated in a roadblock on Route 95 north that forced plaintiffs vehicle to stop on the highway, behind the roadblock, exposed to great danger. Not surprisingly, D'Angelo failed to heed the roadblock, swerved around the state police cruiser, and crashed into plaintiffs vehicle.

We conclude that the trial justice did not consider this evidence in the light most favorable to plaintiff and did not draw all reasonable inferences of proximate cause in plaintiff's favor. The plaintiff produced evidence that reasonably could lead to the conclusion that the officers' decision to continue the pursuit and their failure to terminate the chase earlier, when they realized the danger it posed to themselves as well as innocent citizens, was in reckless disregard for the safety of others. The facts produced at trial reasonably could lead to the inference that D'Angelo drove onto Route 95 because the police continued to chase him and that they should have terminated the pursuit at a point before plaintiff was injured.[11]

 "Causation is proved by inference." *Cartier v. State*, 420 A.2d 843, 848 (R.I.1980). However, plaintiff "is not required to demonstrate with absolute certainty each precise step in the causal chain between the tortfeasors breach of duty and the injury." *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I.1999). Proximate cause is based on reasonable inferences drawn from the evidence. *Id.* As noted, "[p]roof by inference need not exclude every other possible cause, but it must be based on reasonable inferences drawn from the facts in evidence." *Id.*

The plaintiff presented evidence from which a jury could find that D'Angelo collided with her vehicle that was stopped at a makeshift roadblock and that she was injured by a vehicle that was the object of a sustained, high-speed police pursuit. From this evidence, the jury reasonably could infer that defendants were reckless in continuing the chase and that plaintiff was injured as a proximate result of their reckless disregard for her safety. We conclude that the trial justice erred in finding that plaintiff failed to produce evidence

---

11. This would be a different case if the officers had terminated the pursuit earlier and the driver had continued to drive in a reckless fashion, failed to safely exit the highway, and collided with a motorist.

demonstrating proximate cause. The issue of proximate cause was a determination for the jury.

The defendants argue on appeal that judgment as a matter of law was warranted under the doctrine of independent intervening cause. The trial justice, when deciding defendants motion for judgment as a matter of law and considering plaintiffs allegation that the police were negligent in pursuing the truck, said that "[a]ssuming that the police conduct was unreasonable at all, there are many other intervening causes which come into play: [t]he driver continuing on, mounting curbs, eluding police more than once, threatening them with the swerving of the truck, getting onto Route 95, [and] continuing on Route 95 [going] the wrong way." We respectfully disagree.

"Intervening cause exists when an independent and unforeseeable intervening or secondary act of negligence occurs, after the alleged tortfeasor's negligence, and that secondary act becomes the sole proximate cause of the plaintiff's injuries." *Contois v. Town of West Warwick,* 865 A.2d 1019, 1027 (R.I.2004). If the original conduct was " 'totally inoperative as a cause of the injury,' " then the intervening cause becomes the sole proximate cause of injury. *Id.*

" 'If the independent or intervening cause is *reasonably foreseeable,* the causal connection remains unbroken.' " *Almeida v. Town of North Providence,* 468 A.2d 915, 917 (R.I.1983) (holding that an officer was not liable for death resulting from a high-speed chase because he could not have reasonably foreseen suspect's flight from the police when the suspect had not violated any laws or ordinances); *see also Pantalone v. Advanced Energy Delivery Systems, Inc.,* 694 A.2d 1213, 1215–16 (R.I.1997) (employing the rules governing intervening cause, as announced in *Almeida).* Generally, whether an intervening cause was foreseeable is not the province of the trial justice but is a question of fact that should be submitted to the jury. *Pantalone,* 694 A.2d at 1216.

The evidence presented at trial, especially D'Angelo's manner of driving in an attempt to evade the officers, could lead to the conclusion that the officers reasonably should have foreseen that the pursuit would escalate further and might well result in death or serious injury to an innocent third party. We are satisfied that plaintiff presented evidence from which a jury could find that defendants drove in reckless disregard for the safety of others during this high-speed pursuit and that a jury could reasonably conclude was the proximate cause of plaintiff's injuries.

In oral argument before this Court, defendants cited *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989), to support their contention that, as a matter of law, defendants' conduct was not the proximate cause of plaintiff's injuries. In *Gutierrez–Rodriguez,* the United States Court of Appeals for the First Circuit held, on a cause of action brought under 42 U.S.C. § 1983, that both the police officer who fired the bullet that injured the plaintiff and the other officers who shot their firearms in the direction of the plaintiff could be found to be the proximate cause of the plaintiff's injury. *Gutierrez–Rodriguez,* 882 F.2d at 560–61. The court held that the conduct of the police officer who fired the bullet that paralyzed the plaintiff was not a superseding intervening cause relieving the other officers from liability because "[i]t was eminently foreseeable that an encounter with a civilian by four policemen with weapons drawn and ready to fire might result in a discharge of the firearms and an injury to the civilian." *Id.* at 561. Likewise, although the collision

with the stolen vehicle caused plaintiff's injuries, D'Angelo's driving was not independent of defendants' actions during this pursuit, particularly because the officers continued the chase. Had the officers terminated the high-speed pursuit at an earlier point, this argument may be relevant. Unfortunately, that is not the case before us. *See* note 11, *supra.*

We are satisfied that plaintiff produced sufficient evidence concerning the foreseeability of D'Angelo's conduct and the high risk that this pursuit posed to the public, and therefore, that the issue should go to the jury for its determination.

### Duty of Care

On appeal, defendants argue that, by not presenting expert testimony that defendants acted in reckless disregard for the safety of others, plaintiff failed to establish that defendants breached a duty of care owed to plaintiff. The defendants contend that expert testimony was required because "[t]he proper manner of conducting a high[-]speed pursuit, and in particular when to break off * * * the pursuit, is not an area that lies within the common knowledge of a jury." We disagree. Generally, juries are comprised of members of the motoring public familiar with the state's highway system and its traffic laws, including speed limits, red lights, stop signs, and one-way streets.

"[E]xpert testimony is required to establish any matter that is not obvious to a lay person and thus lies beyond common knowledge." *Mills v. State Sales, Inc.,* 824 A.2d 461, 468 (R.I.2003).

However, "[i]f all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony." *Kelly v. Rhode Island Public Transit Authority,* 740 A.2d 1243, 1248 (R.I.1999). We reject defendants' argument that plaintiff was required to present expert testimony to prove that defendants may have breached the standard of care owed to plaintiff.

The defendants' conduct during this high-speed pursuit was not beyond the comprehension of the ordinary, intelligent lay juror. The jury was capable of understanding Officer Mello's and Corporal Quarry's testimony and could draw upon its collective experience to determine whether defendants acted in reckless disregard for the safety of others. *See Kelly,* 740 A.2d at 1248–49 (concluding that expert testimony was not necessary because "the jury could from its collective experience determine whether a bus-turnaround area held open to the public is safe and properly maintained"); *Pincock v. Dupnik,* 146 Ariz. 91, 703 P.2d 1240, 1245 (Ct.App. 1985) (holding that the issue of whether a police officer acted reasonably in conducting a high-speed pursuit was not the proper subject for expert testimony because no special knowledge was required).

### Police Pursuit Policy

In her complaint, plaintiff alleged that defendants were negligent in failing to adopt and comply with a reasonable police pursuit policy. Section 31–12–6(b)[12] re-

---

12. Section 31–12–6(b) provides:
 "Upon establishment of the law enforcement agency accreditation council, the council shall adopt uniform rules and regulations to govern high[-]speed pursuits in the state in accordance with the standards established by the National Law Enforcement Accreditation Agency. Until such rules are adopted, all police departments within the state shall submit to the department of the attorney general a copy of their high[-]speed pursuit policies, which shall be available to the public."

quires all police departments to adopt a high-speed pursuit policy. Here, evidence of defendants' failure to comply with a reasonable police pursuit policy can support a finding that defendants acted in reckless disregard for the safety of others. The requirement that every police department adopt and promulgate a high-speed pursuit policy is an acknowledgement by the Legislature of the need for specific guidelines governing the initiation and termination of police pursuits. For example, the East Providence Police Department's pursuit policy provides that a chase "should never be carried to the extent as to appreciably endanger the lives and property of either innocent users of the highway, the violator, or the officer * * *."

We are satisfied that a police departments pursuit policy, adopted as official policy governing high-speed police pursuits, may serve as a standard that the jury could compare with the defendants' conduct to determine whether there was a breach of the standard of care. A violation of these policies could serve as evidence of the defendants' reckless disregard for the safety of others.

## Conclusion

The judgment is vacated, and the case is remanded to the Superior Court for a new trial.