**Supreme Court**

No. 2011-199-Appeal.
(KC 05-161)

Maureen O'Connell et al.　　　　　:

v.　　　　　　　　　:

William Walmsley et al.　　　　　:

v.　　　　　　　　　:

Tapco, Inc., et al.　　　　　　:

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Maureen O'Connell et al.          :

v.                                :

William Walmsley et al.           :

v.                                :

Tapco, Inc., et al.               :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.


**O P I N I O N**

**Justice Goldberg, for the Court.**  The genesis of this appeal is a tragic automobile collision that claimed the lives of two young men and the resulting action for wrongful death. Before the Supreme Court are Maureen O'Connell and Paul Roberti (plaintiffs), in their capacities as co-administrators of the Estate of Brendan M. O'Connell Roberti, seeking review of a Superior Court order that granted the defendant William Walmsley's motion for judgment as a matter of law following a jury trial. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

**Facts and Travel**

The tragic facts of this case emanate from a horrific automobile collision that occurred at approximately 10:30 p.m. on Sunday, March 9, 2003, in the Town of Coventry, Rhode Island. Earlier that evening, a group of young friends, Brendan O'Connell Roberti (Roberti or decedent), Jason Goffe (Goffe), Michael Petrarca (Petrarca), Frank Paolantonio, Jr. (Paolantonio), Erin

Grant (Grant), and Derek Zisk (Zisk) met at Shooters, a pool hall and bar located on Cowesett Avenue in West Warwick. The friends remained there for a few hours, playing pool and enjoying a few rounds of drinks; at around 10 p.m., they decided to depart and travel to Zisk's house, located off of New London Turnpike in Coventry.

The group left the pool hall in three separate vehicles. Petrarca, who drove a commercial Ford F350 truck with Paolantonio as his passenger, turned left out of the parking lot onto Cowesett Avenue. Goffe followed in his Toyota Corolla, accompanied by Roberti in the passenger seat. Finally, Grant, traveling with Zisk, drove the last vehicle out of the parking lot, and remained—at all times—behind the other vehicles.

According to the occupants of Petrarca's truck, moments after leaving the Shooters parking lot, Goffe increased his speed, crossed the center line of the two-lane road, and passed the truck on the left. The Toyota then returned to the correct lane of travel and continued traveling at a speed of between forty and fifty miles per hour to the end of Cowesett Avenue; both vehicles then turned left onto Main Street and continued toward New London Turnpike, with Goffe's Toyota still ahead of the truck. After traveling approximately one-half mile, the vehicles were required to turn left and proceed around a triangular median, in order to access New London Turnpike. Petrarca avoided this route, however, by making an illegal turn onto a one-way street and passing the Toyota on the left, thereby regaining the lead as Goffe made a legal left turn onto New London Turnpike. Petrarca testified that he made this fateful maneuver "as a joke," however, he agreed that at this point, "it was getting a little crazy."

The vehicles continued west on New London Turnpike into Coventry; the road was straight with intermittent hills and dips. Although Grant continued to follow the Petrarca and Goffe vehicles, she testified that when she realized that she was traveling at about fifty miles per

hour, she slowed down and saw the other vehicles speed away. According to Grant, it appeared that the two cars were racing because "they were about even with each other driving [in] the same direction," with Goffe's vehicle on the left side of Petrarca's truck, facing oncoming traffic. A dip in the road caused Grant to momentarily lose sight of the two vehicles; however, when they reappeared she saw headlights approaching from the opposite direction and watched as Goffe's vehicle swerved into the westbound lane in front of Petrarca's truck.

Petrarca testified that he was traveling around fifty miles per hour in the westbound lane when he looked out the driver's side window and saw Goffe's vehicle alongside his truck, traveling in the eastbound lane. His passenger, Paolantonio, saw headlights approaching from the opposite direction, "probably a lot more than" 500 to 800 feet away. He advised Petrarca to slow down. Petrarca complied and allowed the Toyota to pass; however, according to Petrarca, Goffe passed him "like I was standing still"; he estimated Goffe's speed to be around seventy miles per hour. Petrarca testified that Goffe's vehicle re-entered the westbound lane a few seconds later, at which point Petrarca first noticed the headlights of a vehicle approaching from the opposite direction. Petrarca saw the Toyota's brakes applied momentarily before the car "sh[ot] right back into the oncoming traffic lane" at an angle, as if the car was turning left.

Paolantonio testified that the Toyota "was already on an angle" when it re-entered the westbound lane and that after Goffe passed his truck, he "never had control of the vehicle." According to Paolantonio, the distance between Goffe's vehicle and the approaching headlights was "a lot more than" 300 feet when the Toyota began to spin out of control. Goffe's vehicle then turned into the opposite, eastbound lane at a 180-degree angle when the front end of a vehicle driven by William Walmsley (Walmsley or defendant) collided with the passenger side of the Toyota. Neither Petrarca nor Paolantonio saw Walmsley brake or slow down, leave his

- 3 -

lane of travel, or otherwise make any attempt to avoid the accident. Significantly, Paolantonio testified that Walmsley "probably could have braked * * * because he could have seen [Goffe] spinning out of control long before that."

As a result of the accident, twenty-year-old Goffe[1] and twenty-two-year-old Roberti[2] were pronounced dead at the scene. Walmsley and his passenger, Brenda Chandler (Chandler)—who was Walmsley's fiancée at the time, and who had fallen asleep before the collision—were both seriously injured and taken to the hospital. There, Walmsley's blood was drawn, revealing a blood alcohol level in excess of the legal limit. Walmsley later testified that, at the time of the collision, he and Chandler were returning home from the Mohegan Sun Casino (casino), where they had spent the afternoon eating, drinking, and gambling. Walmsley testified that he had consumed between two and five beers at the casino, but denied that he was in any way impaired by alcohol consumption. Walmsley estimated that he was traveling thirty-five miles per hour and stated that the last thing he remembered was traveling down a hill.[3] Although Walmsley testified that at no point was his view of the road obstructed, he admitted that he did not see Goffe's vehicle or any other headlights before the collision, nor did he apply his brakes or take any evasive action to avoid the accident.

On February 28, 2005, Roberti's parents, Maureen O'Connell and Paul Roberti (plaintiffs), in their capacities as co-administrators of the Estate of Brendan M. O'Connell Roberti, filed suit against Walmsley, Geico General Insurance Company (Geico)—the insurer of

---

[1] In addition to the injuries sustained in the accident, the medical examiner indicated that acute ethanol intoxication also contributed to Goffe's death.

[2] At the time of his death, Roberti was just four days shy of his twenty-third birthday.

[3] When questioned about the moments leading up to the accident, Walmsley testified that "[f]rom the forced trauma of the impact, I believe my recollection minutes before the accident is not in my memory."

the Goffe vehicle—and Donald R. Goffe, Jason Goffe's father and the owner of the Toyota.[4] After a series of settlements and negotiated releases, the case proceeded to trial with Walmsley as the sole defendant.

A jury trial commenced on June 21, 2010, and continued over the course of ten days. The plaintiffs presented several witnesses, including Walmsley, Chandler, two accident reconstruction experts, a toxicology expert, and an economist. The first accident reconstruction expert, retired Coventry Police Det. Paul Koczwanski (Det. Koczwanski), testified that he was called to the scene of the accident shortly after it occurred. He stated that the posted speed limit on New London Turnpike was twenty-five miles per hour, and the contour of the roadway leading up to the point of collision was straight but hilly, with intermittent dips in the road. He testified that, although there were no skid marks at the scene, there were yaw marks— impressions on the roadway left by tires when a vehicle is in the process of turning—which indicated that Goffe had over-steered or sharply turned the vehicle, possibly in an attempt to compensate for a previous maneuver or to regain control of the car.

Based on his investigation, Det. Koczwanski estimated that Goffe's vehicle was not driving seventy miles per hour as Petrarca had testified, but that the Toyota "was traveling

---

[4] Walmsley answered the complaint and filed a cross-claim for contribution and indemnification against Geico, claiming that, if he was found liable, it would be due to the negligence of Goffe. Geico then filed a counterclaim and third-party interpleader complaint, naming Walmsley and Chandler as third-party defendants. In this filing, Geico requested that it be allowed to tender the limits of Goffe's liability policy, to be distributed on a pro rata basis to Roberti's estate, Walmsley, and Chandler. A consent order was entered on February 17, 2006, indicating that Geico had tendered the policy limits, distributing $300,000 to the claimants, and that all claims against Geico and Donald Goffe—including cross-claims for indemnity and contribution—were dismissed with prejudice. Walmsley then filed a third-party complaint for indemnification and contribution against Petrarca—the driver of the truck that was allegedly racing with the Toyota on the night of the accident—and Tapco, Inc., the owner of the truck that Petrarca was driving. The plaintiffs, however, later executed a "Joint Tortfeasor Release and Indemnity Agreement" as to Petrarca, Tapco, and their insurance company, Employers Mutual Casualty Company, in June 2007.

significantly over the [25 m.p.h.] speed limit at the time of impact." He also estimated that Walmsley's car was traveling at around forty miles per hour at the time of the accident. According to Det. Koczwanski, the primary cause of the crash was Goffe's Toyota entering Walmsley's lane of travel, with the speed of both vehicles contributing to the collision. Detective Koczwanski opined that, based on his investigation, Walmsley did not have time to avoid the accident.[5]

According to Donald Mong (Mr. Mong)—plaintiffs' second accident reconstruction expert—the average motorist driving at night would require two and a half seconds to perceive a hazard and react; however, there was "no indication at all of any evasive action taken" by Walmsley to avoid the accident. Based on his investigation of the accident, Mr. Mong concluded that three dominant factors contributed to the accident: namely, the Toyota entering Walmsley's lane of travel, the speed of the two vehicles, and Goffe's failure to maintain control of the Toyota. According to Mr. Mong, the accident would not have occurred absent one of these three events.

The toxicology expert, Prof. Dennis Hilliard (Prof. Hilliard), the Director of the Rhode Island State Crime Laboratory, testified that Walmsley's blood alcohol level was approximately .106 percent when he was tested at the hospital after the collision. Professor Hilliard estimated that at the time of the collision—approximately forty-five minutes before his blood was tested—Walmsley's blood alcohol level would have been .117 percent, with a range from .107 to .124, depending upon the rate at which Walmsley's body metabolized alcohol. Professor Hilliard estimated that, based on Walmsley's testimony concerning his activities and time spent at the

_____

[5] Detective Koczwanski also testified that he observed a tire mark in the sand, which he believed could have been caused by Walmsley attempting to avoid the collision. He subsequently admitted, however, that this detail was not noted in his accident report.

casino, Walmsley would have consumed between ten and twelve beers in order to reach the blood alcohol level registered at the time his blood was tested. He further opined that Walmsley's reaction time and ability to safely operate a motor vehicle were impaired to a significant degree.

At the close of plaintiffs' case, defendant moved for judgment as a matter of law on causation grounds, arguing that plaintiffs had failed to prove that, but for the negligence of defendant, the accident would not have occurred. The trial justice reserved decision and allowed the case to go to the jury, but declared that this was "a very unique negligence case," and that "it will be a difficult case for this jury to decide because there is an enormous amount of conflicting evidence."[6] The jury found that Walmsley was negligent and that his negligence was a proximate cause of Roberti's death. The jury then addressed the issue of comparative negligence and assigned fault to each driver as follows: Walmsley, 3 percent; Goffe, 94 percent; and Petrarca, 3 percent. The jury also determined that the total amount of damages sustained by the estate, without adjusting for percentages of liability, was $10,000.

After the jury verdict, defendant renewed his motion for judgment as a matter of law, and plaintiffs moved for a new trial and an additur. The trial justice granted defendant's motion for judgment as a matter of law, finding that there was no evidence presented tending to establish that defendant's operation of his vehicle was a proximate cause of the collision. The trial justice then proceeded to address plaintiffs' motions, reasoning that in the event that judgment as a matter of law was overturned on appeal, plaintiffs' motion for an additur to $250,000—the statutory minimum for wrongful death cases under G.L. 1956 § 10-7-2—would be granted. Alternatively, the trial justice ruled that, if plaintiffs did not accept the additur, their motion for a

---

[6] At the close of evidence, defendant sought to renew the motion for judgment as a matter of law; the trial justice, however, stated that he would again reserve decision on the motion.

new trial on both liability and damages would be granted.[7]  Judgment was entered in favor of defendant on September 22, 2010; plaintiffs filed a timely notice of appeal.

## Standard of Review

"Our review of a trial justice's decision on a motion for judgment as a matter of law is de novo." McGarry v. Pielech, 47 A.3d 271, 279 (R.I. 2012) (quoting Medeiros v. Sitrin, 984 A.2d 620, 625 (R.I. 2009)).  "This Court, like the trial justice, will examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party.'" Id. (quoting Oliveira v. Jacobson, 846 A.2d 822, 829 (R.I. 2004)).  Judgment as a matter of law is appropriate, if, after conducting this examination, the trial justice "determines that the nonmoving party has not presented legally sufficient evidence to allow the trier of fact to arrive at a verdict in his favor." Id. at 280 (quoting Gianquitti v. Atwood Medical Associates, 973 A.2d 580, 590 (R.I. 2009)).  "However, the trial justice must deny the motion and submit the issues to the jury if there are factual issues on which reasonable people may draw different conclusions." Medeiros, 984 A.2d at 625 (citing DeChristofaro v. Machala, 685 A.2d 258, 262 (R.I. 1996)).  Accordingly, "[w]e will overturn a trial justice's decision to grant a motion for judgment as a matter of law if we determine that the trial justice has invaded the province of the jury by weighing the evidence and assessing the credibility of witnesses.'" Franco v. Latina, 916 A.2d 1251, 1259 (R.I. 2007) (citing Calise v. Curtain, 900 A.2d 1164, 1168 (R.I. 2006)).

## Analysis

On appeal, plaintiffs claim that the trial justice committed error by granting defendant's

---

[7] Because neither party has appealed from the entry of these orders, they are not before the Court and we proceed to pass only on the correctness of the entry of judgment as a matter of law.

motion for judgment as a matter of law, arguing that sufficient evidence was presented to the jury to support a finding that Walmsley's negligence contributed to Roberti's death. After a thorough review of the record in this case, we agree.

"In an action for wrongful death, the plaintiff must, as in any other negligence suit, introduce competent evidence to establish a causal relationship between the defendant's act or omission and the injuries resulting in the decedent's death." Allen v. State, 420 A.2d 70, 72 (R.I. 1980) (citing Evans v. Liguori, 118 R.I. 389, 395, 374 A.2d 774, 777 (1977)). It is well settled that, although "[t]he existence and the extent of a duty of care are questions of law" to be determined by the trial justice, "whether such duty has been breached and whether proximate cause [exists] are the questions for the factfinder." Seide v. State, 875 A.2d 1259, 1268 (R.I. 2005) (quoting Rodrigues v. Miriam Hospital, 623 A.2d 456, 461 (R.I. 1993)); see also Gianquitti, 973 A.2d at 593 ("The true rule is that what is proximate cause of an injury is ordinarily a question for the jury.") (quoting Schenck v. Roger Williams General Hospital, 119 R.I. 510, 517, 382 A.2d 514, 518 (1977)).

We repeatedly have stated that, "[a]lthough proximate cause may not be established by conjecture or speculation, 'proximate cause can be established by circumstantial evidence, and specific direct evidence of * * * proximate cause is not always necessary.'" Seide, 875 A.2d at 1268 (quoting Martinelli v. Hopkins, 787 A.2d 1158, 1169 (R.I. 2001)). Moreover, "[a] plaintiff 'is not required to demonstrate with absolute certainty each precise step in the causal chain between the tortfeasor's breach of duty and the injury.'" Gianquitti, 973 A.2d at 592 (quoting Seide, 875 A.2d at 1269). Significantly, "[w]hen inference is employed to establish causation, '[p]roof by inference need not exclude every other possible cause, * * * it must be based on reasonable inferences drawn from the facts in evidence.'" Id. at 592-93 (quoting Seide, 875

A.2d at 1268-69).

In Oddo v. Cardi, 100 R.I. 578, 579-80, 218 A.2d 373, 374 (1966), this Court was faced with a similar fact pattern as in the case at bar. In Oddo, the plaintiffs were passengers in a vehicle operated by the defendant, when suddenly a vehicle traveling from the opposite direction swerved out of control, crossed the center line, and collided with the defendant's vehicle. Id. The defendant claimed that her motion for a directed verdict should have been granted because she was under no duty to anticipate that the oncoming vehicle would cross the center line. Id. at 580, 218 A.2d at 374. Although we agreed with that broad principle, and noted that "[i]t is true that the operator of a motor vehicle is under no duty to anticipate that the operator of a vehicle approaching from the opposite direction may suddenly turn and cross over to the side of the highway upon which he is operating," id., we also held that, because conflicting testimony was presented showing that the oncoming vehicle began to spin across the highway while the defendant's vehicle was still about 600 feet away—or some five to seven seconds before the collision—the defendant's motion for a directed verdict was properly denied because a question of fact arose as to whether the defendant was exercising due care as the oncoming vehicle was spinning across the highway. Id. at 581, 218 A.2d at 375.

In this case, in passing on defendant's motion for judgment as a matter of law, the trial justice recounted the testimony provided by Walmsley, Grant, Petrarca, and Paolantonio, as well as the expert testimony provided by Prof. Hilliard, Det. Koczwanski, and Mr. Mong. The trial justice found that there was "insufficient or [a] complete absence of evidence that would permit this jury to apportion any liability to the defendant." Specifically, the trial justice determined that there was an "absence of testimony or physical evidence that establishes where operator Goffe's vehicle initially entered the eastbound lane of the defendant prior to impact," and "no

evidence as to where defendant's vehicle was located at the moment the Goffe vehicle entered the eastbound lane of travel either by distance or by roadway reference points." Without this evidence, the trial justice explained, "there is no evidentiary foundation upon which a reasonable juror could conclude that as a result of defendant's intoxication and excessive speed * * * that there was a sufficient period [or] distance and opportunity for this defendant to brake or take any evasive action prior to impact." According to the trial justice, the "[t]hree percent finding of the jury [was] not based on facts in evidence but rather is pure speculation." We disagree with this conclusion.

When viewed in the light most favorable to plaintiffs, and drawing all reasonable inferences in plaintiffs' favor, it is clear that a reasonable jury could assign liability to defendant. It is undisputed that Walmsley was driving in excess of the speed limit, was under the influence of alcohol at the time of the collision, and did not see the Goffe vehicle or any other vehicle at any point before the impact. Although Walmsley testified that his view of the road was unobstructed and that he did not believe he was impaired, Prof. Hilliard testified that Walmsley's blood alcohol level would significantly impair his perception and reaction time. Additionally, the conflicting testimony provided by Petrarca, Paolantonio, and Grant created a jury question as to whether, in the exercise of due caution, Walmsley should have seen Goffe's vehicle and the oncoming headlights of the other vehicles and taken action to avoid the collision, when the Toyota was traveling alongside Petrarca's truck or when it began spinning out of control, entering the eastbound lane before the impact. See Oddo, 100 R.I. at 581, 218 A.2d at 375.

Accordingly, we are satisfied that sufficient evidence was presented in this case establishing intoxication, speed, and an inference of inattention or diminished reaction time on the part of the defendant from which the jury could infer negligence and conclude that

Walmsley's failure to react was a contributing factor resulting in Roberti's death. In our opinion, the trial justice placed far too much emphasis on the lack of evidence—by way of distance or roadway reference points—of the precise location where Goffe's vehicle entered into Walmsley's lane of travel.[8] The fact that no witness was able to establish this point on the roadway is not fatal to the plaintiffs' case, in light of the other evidence presented. Thus, we are satisfied that the trial justice overlooked the evidence that was produced in this case, including the undisputed fact that Walmsley failed to apply his brakes before the collision. In doing so, the trial justice weighed the evidence, and exceeded his authority under Rule 50 of the Superior Court Rules of Civil Procedure.

---

[8] The record reflects that at multiple points during the presentation of witness testimony—and again during his ruling on the defendant's motion for judgment as a matter of law—the trial justice expressed his opinion that the lack of measurements and roadway reference points negatively impacted plaintiffs' case. For instance, when plaintiffs' counsel asked Det. Koczwanski if, at any point prior to the collision Walmsley could have seen Petrarca and Goffe approaching, the trial justice sustained defense counsel's objection, stating:

> "What I'm concerned about in this case is that no one has introduced a diagram of this roadway with distances, widths or landmarks or anything else that would have been helpful. * * * If we had that and directed [Det. Koczwanski] to something like that in evidence and asked them a series of questions about [sight] lines and distance[s], I would permit that. * * * Otherwise it is really worth nil and again one of those very general impressions rather than an inference based on proven facts in the record * * *."

Again, before granting the motion for judgment as a matter of law, the trial justice remarked:

> "Isn't the issue in this case with respect to this motion whether there is any evidence in the record from any witness that by reference points on the roadway or time lines or distances gave this jury information as to where or when the Goffe vehicle, which was [in an] uncontrolled spin[,] initially entered the defendant's lane of travel and at that moment where the defendant's vehicle was in his own lane of travel and that [the] time or distances represented by the two places those vehicles occupied on the road would have provided sufficient time had the defendant been sober to react or break or take evasive action[?]"

## Conclusion

For the reasons set forth in this opinion, we vacate the judgment of the Superior Court granting the defendant's motion for judgment as a matter of law. This case shall be returned to the Superior Court for further proceedings.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Maureen O'Connell et al. v. William Walmsley et al. v. Tapco, Inc., et al.

**CASE NO:** No. 2011-199-Appeal.
(KC 05-161)

**COURT:** Supreme Court

**DATE OPINION FILED:** June 23, 2014

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:** Kent County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

For Plaintiffs: Gregory S. Inman, Esq.

For Defendants: David E. Maglio, Esq.