JOHN F. CONNEALLY *vs.* JOSEPH GEMMA.

JULY 2, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This action of trespass on the case for negligence was brought to recover damages for the loss of plaintiff's personal property temporarily stored in a part of a building that had been condemned by the city of Providence and later was purchased by the defendant for the purpose of demolition. The case was tried in the superior court before a jury and resulted in a verdict for the plaintiff in the sum of $1,760. Thereafter the trial justice granted the defendant's motion for a new trial unless the plaintiff remitted all of the verdict in excess of $900. The remittitur was filed and the defendant has prosecuted his bill of exceptions to such decision and to other rulings of the court during the trial.

The declaration is in one count and alleges in substance that plaintiff had permission from the city, after its notice to vacate, to temporarily store certain of his personal property in a building; that with knowledge thereof defendant bought said building from the city for demolition; that in these and other circumstances set forth defendant had a duty to give plaintiff some notice of the time he was to begin actual demolition of the building and a reasonable opportunity to remove the property therefrom; and that he

negligently violated that duty in failing to notify plaintiff of the demolition and in negligently demolishing the building without notice so as to expose plaintiff's property to loss by theft, which allegedly occurred, to the damage of plaintiff.

It appears that plaintiff was the owner of certain equipment, fixtures and liquors which were maintained and used in connection with his conduct of a taproom located in a building at 1785 Westminster street in the city of Providence. The defendant originally was the owner of the land and building, which consisted of two ground-floor stores and four tenements located on the second and third floors. The plaintiff was a tenant of defendant, occupying one of the ground-floor stores.

On or about October 18, 1949 through condemnation proceedings for a freeway, the city of Providence acquired title to all the premises and on or about November 1, 1949 notified plaintiff to vacate his part of the building. Rent for the month of November, however, was paid by plaintiff to the city's constituted agent, who receipted therefor. The plaintiff further claimed he had permission from such legal agent to allow the property to remain therein until he could obtain a new location or at least until the building was to be actually demolished.

Subsequently the building alone was purchased by defendant for the purpose of demolition. A few days before Memorial Day 1950 defendant began to dismantle the roof and other portions of this building without formal notice to plaintiff. Shortly before or after that time plaintiff had disconnected the fixtures and placed them on the floor with other property so that all might be removed as soon as he could locate an available store. The window was boarded up, the trap door was locked from the inside, the front door was padlocked, and there was no other possible entrance. However, at the close of work on June 1, 1950 a sizeable hole appeared to have been broken through a portion of

the wall which originally separated the taproom from the other ground-floor store, thereby making it possible for strangers to enter and exposing plaintiff's property to theft or damage. By that time a considerable part of the building above and surrounding plaintiff's store had been taken down.

The testimony in that connection included evidence from Earl Sweet, an employee of defendant, that this opening in the wall had been called to the attention of defendant about 4:30 o'clock on the afternoon of June 1 because it was large enough to permit a person to enter and steal plaintiff's property. When the employee suggested to defendant that it should be boarded up, the latter told him: "Mind your business," and in effect also stated that he was leaving it that way in order to accelerate plaintiff's removal of his property so that the building could be demolished.

Much other evidence was also introduced dealing with the conduct of the parties when there existed an admitted relationship of landlord and tenant before the condemnation, the alleged permission to plaintiff by the city to store his property temporarily in the building until it was to be actually demolished, the alleged theft of some of the property between 4:30 and 10 o'clock on the night of June 1, 1950, and a report made to the police that night.

On the other hand defendant specifically denied any ill feeling between the parties or any conduct that would permit such an inference. He further expressly denied the testimony of his employee Sweet as to knowledge of or intention to leave the opening in the wall so as to unnecessarily expose the property of plaintiff to theft or damage.

Evidence was also presented through police officers to show that a report was first made by plaintiff's brother on June 1 late at night; that he could not then give the officer who visited the scene a statement of what property had disappeared; that although then instructed by the police

officer to make up a list of stolen articles neither plaintiff's brother, who made the report, nor the plaintiff, when he returned on June 6 or 7, had subsequently given the police such a statement; and that there was therefore no record of any loss or theft in their files. Testimony was also introduced to show that at least two truckloads of equipment, including some of the items now claimed as lost by plaintiff, had been taken away by an expressman hired by plaintiff and stored in a barn or garage belonging to plaintiff's cousin; that during demolition of the building there was a guard of many police and firemen in the vicinity; and that there was little likelihood of such a theft as plaintiff claimed.

In general defendant's evidence went to contradict the material testimony presented for plaintiff and to show that plaintiff actually was a trespasser to whom defendant owed only a duty not to intentionally or willfully injure him or his property; that there was no such negligence on his part in demolishing the building; and that from seeing defendant and his employees working on the roof several days before the alleged theft plaintiff had knowledge or notice of the starting of demolition.

The first group of fourteen exceptions relied upon by defendant are argued together and relate generally to the admission of certain evidence. This testimony ranges from the amount of rent charged in 1940 to plaintiff as a tenant to an increase therein about 1945, and included other conduct of defendant in plaintiff's place of business in an effort to show a reason or probability for defendant's alleged willful negligence in leaving an opening unguarded for the purpose of accelerating plaintiff's removal of all his equipment and property.

Two of such exceptions relate to questions which were not answered, and three others to questions which were answered before objection but show no motion to strike. Consequently defendant takes nothing by those exceptions.

The other exceptions in this group, which were objected to principally as being too remote or irrelevant in view of the duty and violation as alleged in the declaration, relate chiefly to evidence of defendant's conduct as links in a chain of circumstances to establish by inference an intentional or malicious disregard of plaintiff's rights and property in the event that plaintiff was to be held as a trespasser.

From the declaration and according to the respective theories of plaintiff and defendant presented at the trial, there were issues to be determined by the jury as to whether plaintiff was a tenant at sufferance or a licensee on the one hand, or a technical trespasser on the other. If the plaintiff were to recover, evidence of defendant's negligence, even if intentional or malicious, would still be admissible under plaintiff's theory of his relationship, and such evidence would be necessary under defendant's view of that relationship.

While some of the testimony by itself seems remote and not precisely and immediately directed to the express allegations of the declaration, we cannot say that it was wholly irrelevant in view of the possible relationship between the parties at or about the time when the building was acquired by defendant for demolition. In any event, assuming that some of such testimony was not material, we do not agree that it was so prejudicial as to require a new trial. There was also in evidence, although denied, specific testimony by defendant's employee as to statements by defendant directly disclosing the latter's knowledge of the opening in the wall, and of his declared intention to leave it unguarded in spite of the employee's suggestion that it should be boarded up to prevent exposure to theft. This evidence would be relevant if plaintiff was found to be a trespasser, as claimed by defendant. These exceptions are overruled.

The second group of ten exceptions relate to alleged hearsay evidence in connection with statements by the agent of the city, who had deceased, allegedly giving plain-

tiff permission to store the personal property in the building until demolition actually was to start. Some of the testimony concerning the declarations of such agent, which were made after he had served a notice to vacate and granted plaintiff permission to keep the property in that place, may not have been entirely in accordance with the statute as to declarations of a deceased person, general laws 1938, chapter 538, §6. However, that part which was admissible thereunder and the other evidence offered without objection are sufficient to indicate that there was no prejudice from the admission of the testimony under consideration. We do not find any evidence from defendant which contradicts the ultimate proposition established by proper testimony and inferences that plaintiff had received permission from the city's agent to keep the property stored in the building until it was to be actually demolished and that this was known to defendant when he bought the building. This group of exceptions therefore is overruled.

Exception 26 is to the refusal of the trial justice to direct a verdict for defendant. Apparently in this contention defendant fails to give effect to the established rule which requires that on such a motion the evidence is to be considered from the viewpoint most favorable to the plaintiff. If it is so considered, we think there is legal evidence to support plaintiff's theory of negligence, regardless of whether he was a tenant, licensee, or trespasser. On such a motion the trial justice would not be concerned with the credibility of the witnesses nor the weight of the conflicting evidence.

In the special circumstances therein set forth we cannot say that the declaration did not properly allege a duty owed by defendant to plaintiff or that there was no evidence of the alleged violation of that duty. Whether plaintiff is looked upon as a tenant holding over with permission, or as a mere licensee of the owner through which defendant derived his title to the building for the purpose of demoli-

tion, or as a technical trespasser, there was evidence sufficient to prevent a directed verdict. We find no difficulty with the contentions and citations of law by defendant, but differ with him on their application to the evidence of record. The evidence here does not require, as he claims, only one reasonable conclusion, namely, a direction of a verdict for defendant. This exception is overruled.

Exception 27 is to that portion of the charge dealing with the duty of a landlord toward a tenant, and defendant contends thereunder that plaintiff, being at most a tenant at sufferance of the city of Providence, must be treated only as a trespasser after receipt of the notice to vacate. The contention presumes that as to defendant the plaintiff was a trespasser, which was for the jury to determine. Whether or not he was a trespasser, or whether defendant purchased the building subject to any license, permission or sufferance which the city had extended to plaintiff until the building was ready for actual demolition, were issues of fact for the jury on the conflicting evidence. In the circumstances we do not think that the trial justice erred in giving, among others, some instructions as to the care due a tenant by a landlord or one standing in the latter's position. This exception is overruled.

The defendant's exception 28 is to the refusal to grant his motion for a new trial. He contends that the trial justice failed to exercise his independent judgment in passing on the evidence; that the verdict of the jury was the result of passion and prejudice as indicated by the amount thereof; and that the trial justice should have granted a new trial unconditionally when he came to the conclusion that the verdict was so grossly excessive.

In our judgment the trial justice complied with the rule that on a motion for a new trial he must exercise his independent judgment in weighing the evidence and passing on the credibility of the witnesses. He found that the

evidence of each party in certain respects was such as to make it difficult to ascertain which side was supported by a preponderance. In the circumstances, therefore, he apparently felt the evidence was so nearly balanced in nature and weight that reasonable men could reach different conclusions, and therefore he should not disturb the jury's verdict as to liability. See *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180, 185; *Massemini* v. *Peterson,* 72 R. I. 213, 216. On the other hand he felt certain from his independent consideration of the evidence that the plaintiff did not lose by theft all the articles which he claimed. From a computation based thereon he concluded that plaintiff had lost only the property amounting in value to $900 and therefore he ordered a suitable remittitur.

No citation is necessary to support the well-settled rule that a decision of a trial justice based on conflicting evidence should not be disturbed unless it is clearly wrong. In our opinion it is not easy to determine the liability or amount of lost articles because of the sharply conflicting and at times incredible testimony appearing in parts of the evidence offered by each party. From our review of the transcript we cannot say that the trial justice was clearly wrong in his decision as to liability, nor can we say that the amount of the verdict as reduced by the remittitur which he ordered is still grossly excessive. This exception is overruled and the other exceptions which are neither briefed nor argued are deemed to be waived.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*Isidore Kirshenbaum, Anthony Vacca,* for plaintiff.

*S. Thomas Cotroneo, for defendant.*