**Supreme Court**

No. 2011-266-Appeal.

No. 2012-77-Appeal.

No. 2012-116-Appeal.

(No. NC 03-402)

Simcha Berman et al.             :

v.                         :

Laura Sitrin, in her capacity as Finance    :
Director for the City of Newport et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Simcha Berman et al.        :

v.        :

Laura Sitrin, in her capacity as Finance     :
Director for the City of Newport et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.** The plaintiffs, Simcha Berman and Sarah Berman,[1] appeal from (1) a judgment entered after a jury verdict in favor of the defendant, the State of Rhode Island, in the plaintiffs' civil action seeking damages and (2) the trial court's denial of motions for judgment as a matter of law, a new trial, and to vacate judgment. The defendant cross-appeals the denial of its motion for judgment as a matter of law. For the reasons set forth below, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

This is the second time this case comes before us; however, on this occasion, the matter arises in an entirely new posture. While we assume the reader's familiarity with our prior opinion, Berman v. Sitrin, 991 A.2d 1038 (R.I. 2010) (Berman I), by way of background we trace succinctly the winding path of this long and tragic tale.

---

[1] Sarah Berman has since become divorced from Simcha, and her name is now Chaya Sarah Aryeh.

On August 17, 2000, Simcha Berman fell while descending on a beaten path that abuts the paved portion of the Cliff Walk.[2] As a result of this fall, Simcha sustained a severe spinal cord injury that has rendered him a quadriplegic.

In 2003, an action was commenced by Simcha and his then-wife, Sarah, in the Newport County Superior Court. Originally, the Preservation Society of Newport County (society), the City of Newport (city or Newport), the Cliff Walk Commission (commission), and the State of Rhode Island (state) were all named as defendants. The plaintiffs alleged that Simcha's injuries were caused by defendants' negligent failure to properly inspect, maintain, and repair the location where Simcha fell and that defendants knew of defects in the location and failed to guard or warn against such defects.

In 2005, all defendants moved for summary judgment on the ground that they were immunized from liability under Rhode Island's Recreational Use Statute (RUS), G.L. 1956 chapter 6 of title 32. A first hearing justice denied each of the motions for summary judgment. However, a second hearing justice later granted summary judgment in favor of both the society and the city in light of the RUS. The plaintiffs timely appealed to this Court. Meanwhile, the state, which had not been granted summary judgment, was left on the sidelines during the pendency of the appeal to this Court. The state requested that the Superior Court reconsider its decision. The state argued that it had been placed in a "legal Catch 22" whereby it was still somehow potentially exposed to liability for possibly having a sufficient degree of control over the location where the injury occurred, yet, nonetheless, was unable to avail itself of owner immunity under the RUS. See § 32-6-3. The Superior Court ratified its earlier decision and denied the state's motion to vacate or otherwise reverse the previous ruling.

---

[2] The Cliff Walk is a major Newport tourist attraction which runs approximately 18,000 feet along Newport's shoreline, high above the rocky Atlantic coast.

Accordingly, on this case's previous sojourn before us, we addressed only whether it was appropriate for the city and the society to have been granted summary judgment. Berman I, 991 A.2d at 1041. In that appeal, we affirmed the entry of summary judgment for the society,[3] but we vacated the grant of summary judgment for the city and remanded the case to the Superior Court for trial against the remaining defendants. Id. at 1053.

Prior to the commencement of the jury trial on April 5, 2011, the trial justice sifted through a variety of pretrial motions. The plaintiffs moved for a change of venue or change of venire, arguing that such was necessary to prevent local prejudice from inhibiting plaintiffs' opportunity to obtain a fair trial. The motion was denied by the trial justice. Additionally, the trial justice denied plaintiffs' motion for partial summary judgment on the issue of liability, holding that there were still factual issues to be resolved regarding breach and causation.

The day after the jury was empaneled, the jury, along with the trial justice and counsel, took a view of the Cliff Walk at the location where Simcha sustained injury. After conducting the view, the trial justice inquired on the record if any matter should be addressed. The plaintiffs now contend that they took issue with certain aspects relating to the jury view, though no such objection appears in the record. Following opening statements, plaintiffs settled with the city and the commission, leaving the state as the sole remaining defendant. The trial justice instructed the jury, without any objection, that it not speculate as to the reason the city and the commission were no longer parties.

The trial continued on for a week. During the examination of Keith Stokes, a former Newport City Councilman and member of former Governor Bruce Sundlun's administration,

---

[3] We affirmed on grounds other than those offered by the trial justice. See State v. Lynch, 770 A.2d 840, 847 (R.I. 2001). Rather than determining that the society should be afforded immunity under the Recreational Use Statute, we held that the society owed no duty to plaintiffs. Berman v. Sitrin, 991 A.2d 1038, 1048 (R.I. 2010) (Berman I).

plaintiffs sought to introduce a 1987 letter from Sister Lucille McKillop, written while she was President of Salve Regina College (now Salve Regina University) which discussed the death of a Salve student on the Cliff Walk earlier that year. The trial justice expressed concerns that the letter potentially constituted hearsay and that its value as notice to the state of the circumstances that gave rise to Simcha's accident was lacking. He noted that there was insufficient supplementary evidence to establish that the incident discussed in the letter was sufficiently similar in time, location, condition, or circumstances to that of Simcha's fall. Further, he pointed out that the letter was addressed to the then-City Manager of Newport as opposed to the state. Accordingly, the trial justice declined to allow the document to be entered into evidence as a full exhibit.

Prior to the end of its case-in-chief, the state sought to introduce evidence, pursuant to Rule 411 of the Rhode Island Rules of Evidence, that the city had insurance coverage on the Cliff Walk. Earlier in the trial, plaintiffs had introduced into evidence as a full exhibit a document discussing a meeting that took place between city, state, and federal officials regarding damage to the Cliff Walk as a result of a hurricane. That document mentioned that the city had liability insurance and that the attorney for the liability insurer attended the meeting and was active in the discussion. The plaintiffs conceded that the city had liability insurance covering the Cliff Walk at the time of Simcha's fall. In light of this concession and the trial justice's finding that plaintiffs had opened the door by introducing into evidence the document indicating that the city had liability insurance, the trial justice informed the jury that the city had insurance covering the Cliff Walk at the time of Simcha's fall. He then instructed the jury that such information was offered simply for the purpose of demonstrating the city's ownership or control of the Cliff Walk.

At the appropriate times, both parties moved for judgment as a matter of law, but the judge reserved decision. Counsel gave closing arguments, and afterwards the trial justice proceeded to charge the jury. Included in his charge, was an explanation that the state owed a duty to plaintiff to exercise reasonable care in connection with the state's actions regarding the Cliff Walk. The trial justice inquired if counsel had any objections to his charge. The only exception raised by plaintiffs was to an illustration about burdens of proof, which the trial justice promptly clarified. No other exceptions were raised.

On April 13, 2011, the jury returned a verdict for defendant finding that the state was not negligent, and the Superior Court entered judgment accordingly.[4] On May 19, 2011, the trial justice denied both parties' renewed cross-motions for judgment as a matter of law and plaintiffs' motion for a new trial, thereby allowing the jury verdict to stand. Both sides filed timely notices of appeal. Subsequently, plaintiffs filed a motion to vacate the judgment and order a new trial based on newly-discovered evidence and other grounds pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, which the trial justice denied after a hearing on February 17, 2012.

The plaintiffs filed another timely notice of appeal and we then consolidated the three appeals before this Court. Additional facts will be provided, as needed, to resolve the issues raised on appeal.

---

[4] The verdict form asked the jury the following question:

> "1. Have the Plaintiffs proved by a preponderance of the evidence that the State of Rhode Island was negligent and that its negligence was a proximate cause of the Plaintiffs' injuries."

The jury responded to this question with the answer "NO."

## II

### Standards of Review

#### A

#### Change of Venue or Venire

We review the denial of a motion to change venue for abuse of discretion. State v. Burns, 79 R.I. 130, 132, 84 A.2d 801, 802 (1951). So too shall we review a denial of a motion to change venire. See State v. Baumruk, 280 S.W.3d 600, 613 (Mo. 2009) (en banc) ("When evaluating whether to grant or deny a change in venire, the same standards apply as when evaluating whether to grant or deny a change in venue."). The party requesting such a change must "establish by reasonably clear and convincing evidence that because of prejudice in the county in which the case was commenced he could not have a fair trial." Burns, 79 R.I. at 132, 84 A.2d at 802.

#### B

#### Jury View

"It is well settled that the taking of a view is addressed to the discretion of the court * * *." DiMaio v. Del Sesto, 102 R.I. 116, 120, 228 A.2d 861, 863 (1967). Accordingly, our review of the trial justice's decision to grant a view is limited to "whether or not in the circumstances here the granting of the motion for a view was an abuse of discretion." Ajootian v. Director of Public Works, 90 R.I. 96, 102, 155 A.2d 244, 247 (1959).

#### C

#### Admissibility of Evidence

We have consistently held that "the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice[']s decision

- 6 -

unless a clear abuse of that discretion is apparent." Morel v. Napolitano, 64 A.3d 1176, 1179 (R.I. 2013) (quoting Notarantonio v. Notarantonio, 941 A.2d 138, 149 (R.I. 2008)).

## D

## Jury Instructions

We examine "[jury] instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them * * *." Lett v. Giuliano, 35 A.3d 870, 874 (R.I. 2012) (quoting State v. Cardona, 969 A.2d 667, 674 (R.I. 2009)). Such review is de novo. King v. Huntress, Inc., 94 A.3d 467, 482 (R.I. 2014). Nonetheless, "[a]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." Contois v. Town of West Warwick, 865 A.2d 1019, 1022 (R.I. 2004) (quoting Montecalvo v. Mandarelli, 682 A.2d 918, 922 (R.I. 1996)). Further, "[i]t is well established that [t]he charge given by the trial justice need only adequately cover * * * the law." Children's Friend & Service v. St. Paul Fire & Marine Insurance Co., 893 A.2d 222, 229 (R.I. 2006) (quoting Contois, 865 A.2d at 1022). Likewise, it goes without saying that "as long as the applicable law is correctly stated," the "trial justice is free to use his [or her] own words" in articulating the charge. Cady v. IMC Mortgage Co., 862 A.2d 202, 213 (R.I. 2004).

## E

## Motion for Judgment as a Matter of Law

"Our review of a trial justice's decision on a motion for judgment as a matter of law is de novo." Gianquitti v. Atwood Medical Associates, Ltd., 973 A.2d 580, 589 (R.I. 2009) (citing Franco v. Latina, 916 A.2d 1251, 1258 (R.I. 2007)). In doing so, "this Court applies the same standards as did the trial justice." Botelho v. Caster's, Inc., 970 A.2d 541, 544 (R.I. 2009) (citing

Marcil v. Kells, 936 A.2d 208, 212 (R.I. 2007)).  Accordingly, a motion for judgment as a matter of law is appropriately denied if, after "evaluat[ing] the evidence adduced at trial in the light most favorable to the nonmoving party," there remain "factual issues concerning which reasonable people may reach differing conclusions."  Id. at 545.

**F**

**Motion for a New Trial**

"As we have stated on numerous occasions, in considering a motion for a new trial, the trial justice sits as a 'super juror' and is required to 'make an independent appraisal of the evidence in the light of his [or her] charge to the jury.'"  King, 94 A.3d at 481 (quoting Botelho, 970 A.2d at 545).  If the trial justice has performed this task, then his or her decision "is accorded great weight by this Court and will not be disturbed unless the plaintiff 'can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'"  Botelho, 970 A.2d at 546 (quoting International Depository, Inc. v. State, 603 A.2d 1119, 1123 (R.I. 1992)).  Still, "even if we conclude that the trial court erred in performing its function, we shall not set aside the jury's verdict if after looking at the record in a 'light most favorable to the prevailing party,' we find competent evidence that sustains the verdict of the jury."  Pickwick Park Ltd. v. Terra Nova Insurance Co., 602 A.2d 515, 521 (R.I. 1992) (quoting Fox v. Allstate Insurance Co., 425 A.2d 903, 907 (R.I. 1981)).  However, with respect to a motion for a new trial on questions concerning "an alleged error of law, our review is de novo."  Children's Friend & Service, 893 A.2d at 229.

## G

### Motion to Vacate Judgment

It is well settled that "[a] motion to vacate a judgment is left to the sound discretion of the trial justice and such a ruling will not be disturbed absent an abuse of discretion." Malinou v. Seattle Savings Bank, 970 A.2d 6, 10 (R.I. 2009) (citing Greenfield Hill Investments, LLC v. Miller, 934 A.2d 223, 224 (R.I. 2007) (mem.)).  Additionally, our "review is limited to an examination of the decision to determine 'the correctness of the order granting or denying the motion, not the correctness of the original judgment.'" Id. (quoting Greenfield Hill Investments, LLC, 934 A.2d at 224).

## III

### Analysis

On appeal, plaintiffs assign a multitude of errors to the rulings of the trial justice.  We shall address these arguments seriatim.

## A

### Change of Venue or Venire

The plaintiffs argue that their motion for a change of venue or venire should have been granted, alleging that there was substantial pretrial publicity and news commentary critical of plaintiffs' case and the potential ramifications for the Cliff Walk, which would decrease plaintiffs' chance of obtaining a fair and impartial jury. The plaintiffs' assertion of potential bias focused exclusively on residents of the City of Newport and did not assert that jurors who might be drawn from other towns in Newport County would be biased.  The trial justice found that, in the absence of any testimony or other evidence that possible jurors in the county had formed an opinion adverse to plaintiffs' case, the sparse newspaper articles cited by plaintiffs did not

amount to the "clear and convincing evidence" required to justify a change of venue or venire. Burns, 79 R.I. at 132, 84 A.2d at 802. Nothing about that determination can be said to be an abuse of discretion. Furthermore, no objection was raised regarding the ability of the jury to hear the case after the jury had been sworn. See G.L. 1956 § 9-10-17 ("If a party knows of any objection to a juror before the case is opened to the jury and omits to suggest it to the court, he or she shall not afterwards make the objection, unless by express leave of the court.").

## B

## Jury View

On appeal, plaintiffs take issue with the manner in which the jury view was conducted and the potential confusion that could have arisen because of changed circumstances from the time of Simcha's fall. However, the record does not reflect that any objection was made regarding the procedure used for the view or about anything that took place while it was conducted. Nonetheless, plaintiffs insist that an objection was lodged at some point.

Recently, we recognized that a party taking issue with a matter pertaining to a jury view may not be foreclosed by the raise-or-waive rule when the party was unable to realize that a "significant evidentiary event occurred during the view." Yi Gu v. Rhode Island Public Transit Authority, 38 A.3d 1093, 1100 (R.I. 2012). However, we emphasize that "the better practice is for counsel to articulate specific objections on the record to ensure that such issues are properly preserved for appellate review." State v. Ibrahim, 862 A.2d 787, 795 (R.I. 2004). Counsel should be vigilant in scanning for potential error that might occur during a view. Nonetheless, the circumstances of Yi Gu are not present here. The plaintiffs were cognizant that the area to be viewed may have appeared somewhat different from the time of Simcha's fall, but they still

failed to timely lodge an objection on the record.  Further, nothing indicates that the view was treated as evidence by the jury.

Even if plaintiffs' objection to the jury view was not waived, the argument must still fail. The decision to grant "a view is addressed to the discretion of the court."  DiMaio, 102 R.I. at 120, 228 A.2d at 863.  The trial justice believed that the taking of a view of the Cliff Walk would allow the jury to better understand the evidence in light of repeated references to the Cliff Walk that would occur during trial.  Prior to taking the view, the trial justice properly informed the jury that the view was not evidence, but only an aid to the jury's understanding of the evidence.  We cannot say that the trial justice's decision, especially in conjunction with his cautionary instruction, was an abuse of discretion.

## C

### Application of Berman I

The major thrust of plaintiffs' appeal rests on the argument that the trial justice erred in his application of Berman I and that his determinations went against the law of the case.

At the outset we note that "[t]he law of the case doctrine * * * is a flexible rule that may be disregarded when a subsequent ruling can be based on an expanded record."  Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 424 (R.I. 2009) (quoting Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666, 677 (R.I. 2004)).  Our decision in Berman I came at the summary judgment stage as opposed to the fully developed factual record we have before us after a trial on the merits.  See Nationwide Property & Casualty Insurance Co. v. D.F. Pepper Construction, Inc., 59 A.3d 106, 110 n.3 (R.I. 2013) ("The denial of a motion for summary judgment merely determines that a fact issue is involved, and does not even establish the law of the case." (quoting Rhode Island Public Telecommunications Authority v. Russell, 914 A.2d 984, 991 (R.I. 2007)).

- 11 -

Further, we cannot stress enough that whatever is to be gleaned from <u>Berman I</u>, on both the case at bar and beyond, is necessarily constrained by the posture in which we rendered our decision: review of the grant of summary judgment. "[I]n ruling on a motion for summary judgment, the trial justice must look for factual issues, not determine them. * * * [T]he justice's only function is to determine whether there are any issues involving material facts." <u>Steinberg v. State</u>, 427 A.2d 338, 340 (R.I. 1981). Our review employed the same standard as the trial justice. <u>Berman I</u>, 991 A.2d at 1043.

Thus, in <u>Berman I</u>, we were forced to "consider[ ] the evidence in the light most favorable to the nonmoving party [plaintiffs], without weighing the evidence or evaluating the credibility of witnesses, and draw[ ] from the record all reasonable inferences that support[ed] the position of the [plaintiffs]." <u>Gianquitti</u>, 973 A.2d at 590 (quoting <u>Calise v. Curtin</u>, 900 A.2d 1164, 1168 (R.I. 2006)). We expressly acknowledged that "[t]his Court is not the finder of fact." <u>Berman I</u>, 991 A.2d at 1053. However, as a matter of law, based on the record then before us, we expressed that "[i]n our opinion, the city had an affirmative duty to take reasonable steps to warn and shield unsuspecting visitors * * * in some reasonable manner." <u>Id.</u> at 1051. Conversely, based on that same limited record, we found that there was "no duty owed by the Society." <u>Id.</u> at 1048. Still, we recognized that "the question of whether the city is liable in tort is a task that is committed to the fact-finder," and that it remained to be resolved. <u>Id.</u> at 1053. Moreover, we remarked that it was a completely open question as to whether the state, which was not a party to the appeal before us, had any responsibility for the maintenance of the Cliff Walk. <u>Id.</u> at 1046 n.9. It was, as we sometimes say, an issue for another day.

The plaintiffs' contentions overlook the manner in which the trial justice allowed the case to be tried. Although the state was not a party to our decision in <u>Berman I</u>, the trial justice still

- 12 -

refused to afford the state immunity under either the public duty doctrine or the RUS. Those determinations parallel our holdings in Berman I regarding the defenses available to the city. See Berman I, 991 A.2d at 1044 n.7 ("[W]e are of the opinion that the public duty doctrine and its exceptions are not relevant to the case at bar."); see id. at 1053 ("[T]he immunity provided by the RUS is not available to [the] City * * *."). Indeed, at the outset of the proceedings, the trial justice explained to the venire that plaintiffs' theory of the case was that "the State of Rhode Island * * * assumed authority * * * and * * * exercised control over the Cliff Walk." Further, during his final charge, he instructed the jury that the state owed plaintiff a duty of reasonable care and allowed the case to proceed to the jury on a straightforward negligence claim, uninhibited by any immunity defenses, notwithstanding the absence of any expert testimony presented by plaintiffs to support their claims regarding duty or breach. Accordingly, as much as possible, the trial justice followed both the "letter and spirit" of the salient holdings of our decision in Berman I. Sansone v. Morton Machine Works, Inc., 957 A.2d 386, 398 (R.I. 2008) (quoting RICO Corp. v. Town of Exeter, 836 A.2d 212, 218 (R.I. 2003)).

Nonetheless, plaintiffs assign error to the introduction of testimony[5] suggesting that the city and state believed they did not have authority to take certain actions with respect to the Cliff Walk.[6] In the trial below, the state, as the sole remaining defendant, unquestionably had the right to defend itself against plaintiffs' claims. The plaintiffs, however, take issue with the

---

[5] The plaintiffs also assign error to the failure to provide the jury with specific instructions regarding the duty (or lack thereof) of the society with respect to the Cliff Walk. This argument is addressed Part III E, infra.

[6] The plaintiffs contend that res judicata or collateral estoppel should have precluded testimony of this nature. This contention fails under either doctrine because the state was not a party to Berman I and did not litigate any of the issues that may have been decided therein. See Reynolds v. First NLC Financial Services, LLC, 81 A.3d 1111, 1115, 1118 (R.I. 2014) (noting that the first requirement for res judicata is identity of parties and that a prerequisite for application of collateral estoppel is previous litigation between the same parties or parties in privity).

manner in which the state defended itself. To a large extent, the state's defense focused on highlighting its limited involvement with the Cliff Walk. Additionally, the state sought to more fully flesh out the specific actions that certain entities had taken with respect to the Cliff Walk. Of course, the state was free to introduce evidence that may have inculpated the city in some way. See Cooney v. Molis, 640 A.2d 527, 530 (R.I. 1994) ("[A] remaining joint tortfeasor is free to assert the settling joint tortfeasors' liability in their absence."). As far as testimony regarding the relationship between the society and the Cliff Walk is concerned, we cannot say that the error, if any, in admitting such evidence was so prejudicial as to warrant reversal. See Conneally v. Gemma, 82 R.I. 136, 142, 107 A.2d 308, 311 (1954); see Part III D, infra.

## D

## Evidentiary Rulings

The plaintiffs argue that the trial justice erred with respect to three main evidentiary issues. We address each of these arguments separately below, mindful that "[w]hen reviewing such decisions, we will not conclude that a trial justice abused his or her discretion as long as some grounds to support the decision appear in the record." Dalo v. Thalmann, 878 A.2d 194, 200 (R.I. 2005) (quoting Boscia v. Sharples, 860 A.2d 674, 677 (R.I. 2004)).

### 1. Testimony Regarding the Society

As a component of their larger argument assigning error to the trial justice's application of Berman I, plaintiffs take issue with the introduction of testimony regarding the nature of the relationship between the society and the Cliff Walk. Distilled to its essence, plaintiffs' contention is that they were prejudiced by allegedly irrelevant and immaterial evidence. Like other evidentiary issues, we review the "admission of evidence objected to as being irrelevant or immaterial" under the abuse of discretion lens. Gaglione v. Cardi, 120 R.I. 534, 538, 388 A.2d

- 14 -

361, 363 (1978). Indeed, "[t]he determination of whether evidence is relevant is confided to the sound discretion of the trial justice * * *." State v. Silvia, 898 A.2d 707, 716 (R.I. 2006). "Furthermore, it is the burden of the party opposing such evidence to establish that the proposed evidence clearly has no bearing on the proceedings." Jones v. Wilbur, 604 A.2d 779, 780 (R.I. 1992).

Specifically, plaintiffs disagree with the introduction of testimony that indicated: (1) that the society was the owner of the specific piece of land on which Simcha sustained injury; and (2) that the city and state needed permission from landowners whose property abuts the Cliff Walk, including the society, to install signage or fencing on the property owners' land. This grievance fails to acknowledge that this testimony was elicited from plaintiffs' own witness. A party faces a trying task to complain that its own witness's testimony treaded into troublesome territory.[7] While one of the state's witnesses also testified to these same facts, we find that "the admission of [the testimony] was not prejudicial error, since it appears substantially without objection elsewhere in the transcript" of plaintiffs' own witness. Grygiel v. Grygiel, 68 R.I. 155, 158, 26 A.2d 743, 744 (1942). Therefore, even "assuming that some of such testimony was not material, we do not agree that it was so prejudicial as to require a new trial." Conneally, 82 R.I. at 142, 107 A.2d at 311.

### 2. Letter from Sister McKillop

The plaintiffs also argue that the letter from the then-President of Salve Regina College, Sister Lucille McKillop, should not have been excluded from evidence. Written on October 7,

---

[7] This is especially true considering plaintiffs did not attempt to impeach their witness with a prior inconsistent statement or otherwise seek to treat the witness as adverse. See R.I. R. Evid. 607; State v. Vargas, 420 A.2d 809, 812 (R.I. 1980) ("[A] party who is surprised by his own witness's testimony may be permitted, in the discretion of the trial justice, to confront the witness with prior inconsistent statements.").

1987, the letter was addressed to the then-City Manager of Newport and discussed the death of a Salve student on the Cliff Walk and the writer's belief that fencing was needed in certain areas along the Cliff Walk. The trial justice refused to admit the document as a full exhibit, finding that the letter was hearsay and that plaintiffs had not established sufficient similarity between the events described in the letter and the case at bar to constitute notice to the state.

Here, the trial justice explained his misgivings with the letter being offered as some type of notice to the state. He noted that the letter was written more than a decade prior to Simcha's fall and that it was addressed to the city instead of the state. Additionally, the trial justice found that plaintiffs had not established sufficient similarity in time, location, condition, or circumstances between the incident discussed in the letter and Simcha's fall. Given the thoroughness of the grounds supporting his decision, we cannot say that the trial justice abused his discretion in excluding the contents of the letter from evidence.

### 3. City's Liability Insurance

The plaintiffs also assign error to the jury being informed that the city had liability insurance on the date of Simcha's fall. After the jury was so informed, the trial justice instructed the jury that such information was offered simply for the purpose of demonstrating ownership or control and was not to be considered for the purpose of determining the negligence of any party.

Rule 411 of the Rhode Island Rules of Evidence provides that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully." However, the rule also explicitly states that it "does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control * * *." Id. In light of this, the trial justice found that evidence that the city had liability insurance was relevant to the issue of control over the

Cliff Walk and was, therefore, admissible. Additionally, the trial justice found that plaintiffs had opened the door to this evidence by placing a document into evidence indicating that the city had insurance.

As we stated above, the admissibility of evidence is committed to the trial justice's discretion. See Morel, 64 A.3d at 1179. Additionally, a party that opens the door to certain evidence on a particular issue is hard pressed to complain of the opposing party casting further light on the newly exposed threshold. See United States v. Joost, 133 F.3d 125, 128 (1st Cir. 1998) ("A party who opens a door cannot be heard to complain that the adverse party strolled through the doorway."); State v. Pona, 66 A.3d 454, 470 (R.I. 2013).

However, because plaintiffs conceded that the city had liability insurance covering the Cliff Walk during the relevant time, there was no need for the jury to hear prolonged testimony or see extensive documentary evidence on this point. Rather, the jury was given a simple instruction by the trial justice.[8] "Although a trial justice's instructions are not 'evidence,' we review [his] instruction on insurance under Rule 411 to determine whether it violated the spirit of the rule." Oden v. Schwartz, 71 A.3d 438, 454 (R.I. 2013). We review "issues pertaining to jury instructions * * * de novo." Id. (quoting State v. Vargas, 991 A.2d 1056, 1060 (R.I. 2010)).

Here, the trial justice correctly acknowledged that control and responsibility were salient issues. See Berman I, 991 A.2d at 1046 n.9. This fact is highlighted by language contained in

---

[8] After plaintiffs conceded that the city had liability insurance covering the Cliff Walk for the relevant time, the trial justice instructed the jury as follows:

"I am going to inform you that at the time of Mr. Berman's fall on August 17, 2000, the City of Newport had insurance against liability for that event. Now this is not being offered to you as to whether anyone was negligent, the State or the City or anyone else for that matter. It's simply being offered to you as evidence of ownership or control of the Cliff Walk at that time. And it's not to be considered by you in rendering a verdict on the issue of damages * * * to either Mr. or the then Mrs. Berman."

the document mentioning insurance introduced by plaintiffs. In detailing what took place at a meeting between city, state, and federal officials regarding maintenance of the Cliff Walk, a participant at the meeting stated that "[t]he entire ensuing discussion then centered on the issue of ownership with all sides trying to avoid any responsibility for ownership." Further, the fact that the city had already settled did not preclude the state from trying to show that the city was the responsible party. As we have said, a "remaining joint tortfeasor is free to assert the settling joint tortfeasors' liability in their absence. This holding, in our opinion, encourages settlement but does not prejudice the rights of the nonsettling defendants." Cooney, 640 A.2d at 530.

While we acknowledge that "the trial justice might more appropriately have refrained from using the phrase '[had insurance against liability for that event]' in [his] instruction, we cannot say that the use of this phrase so pervaded the minds of the jurors that they were rendered incapable of arriving at a fair and impartial verdict." Oden, 71 A.3d at 455. Indeed, the instruction expressly told the jurors that the information was "not being offered * * * as to whether anyone was negligent * * * [a]nd it's not to be considered * * * in rendering a verdict on the issue of damages." "[I]t is well settled that the members of the jury are presumed to follow the trial justice's instructions," and we see no reason to upset that presumption here. Oden, 71 A.3d at 455 (quoting State v. Clark, 754 A.2d 73, 80 (R.I. 2000)). Accordingly, we conclude that the trial justice did not err in his instruction regarding liability insurance and the limited purpose for which it could be considered.

### E

### Instructions to the Jury

On appeal, plaintiffs also take issue with some of the other instructions given to the jury. In particular, plaintiffs argue that the trial justice erred in refusing to instruct the jury that the

- 18 -

society had no duty, responsibility, or control over the location where the incident occurred. Additionally, plaintiffs contend that the trial justice erred in refusing to specifically instruct the jury that the state had assumed a duty of care over the premises in question.[9]

We need not address these arguments. The plaintiffs did not raise these objections to the jury instructions below. "We have noted that we are especially rigorous in the application of the raise-or-waive rule when considering objections to jury instructions." Botelho, 970 A.2d at 548. As such, plaintiffs' "failure to object to a jury instruction precludes review of the instruction on appeal." State v. Pacheco, 763 A.2d 971, 979 (R.I. 2001).

We take this moment to reiterate that although "no particular formality is required of counsel in raising an objection," there still must be an objection raised on the record. King, 94 A.3d at 483 (quoting A.R. Alvernas, Inc. v. Cohen, 420 A.2d 78, 81 (R.I. 1980)). With respect to jury instructions, it is imperative that a focused objection "specific enough to alert the trial justice as to the nature of [the trial justice's] alleged error" in giving any jury instruction (including a trial justice's failure to instruct as to a particular issue) must be made on the record after the jury is instructed and before it retires to deliberate. Id. (quoting Botelho, 970 A.2d at 548). Such is required in order to comply with Rule 51(b) of the Superior Court Rules of Civil Procedure. Further, this is required even if a party has previously made a request for a particular

---

[9] Contrary to plaintiffs' assertion, the trial justice specifically instructed the jury with the following:

> "Now in this case the State had a duty to exercise ordinary and reasonable care in connection with its actions taken with respect to the Cliff Walk."

instruction[10] or if the trial justice has previously expressed an opinion on a particular instruction at an unrecorded charging conference or otherwise.

**F**

**Motions for Judgment as a Matter of Law, New Trial, and Vacation of Judgment**

The plaintiffs argue that the trial justice erred in refusing to grant plaintiffs' motion for judgment as a matter of law or, alternatively, in refusing to grant a new trial based on alleged factual and legal errors, or otherwise vacate judgment based on supposed newly discovered evidence and misrepresentations from defendant. Finding no error in the trial justice's rulings on each of these grounds, we reject them in turn.

1. Motion for Judgment as a Matter of Law

The issue of negligence may be treated as a matter of law "only if the 'facts suggest only one reasonable inference.'" Berard v. HCP, Inc., 64 A.3d 1215, 1218 (R.I. 2013) (quoting DeMaio v. Ciccone, 59 A.3d 125, 130 (R.I. 2013)). "[I]f there are 'factual issues on which reasonable people may draw different conclusions,'" the motion must be denied. Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Co., 11 A.3d 1078, 1083 (R.I. 2010) (quoting Black v. Vaiciulis, 934 A.2d 216, 219 (R.I. 2007)).

It is well established that, in a negligence action, whether a particular "duty has been breached and whether proximate cause [exists] are * * * questions for the factfinder." O'Connell v. Walmsley, 93 A.3d 60, 66 (R.I. 2014) (quoting Seide v. State, 875 A.2d 1259, 1268 (R.I. 2005)). Here, over protests by the state, the trial justice instructed the jury that the state owed a duty to exercise ordinary and reasonable care in connection with its actions taken with respect to

---

[10] The requirement of a focused objection to any jury instruction deemed objectionable after the jury is instructed but before it retires is mandatory, notwithstanding any contrary assertion in Soares v. Ann & Hope of Rhode Island, Inc., 637 A.2d 339, 350-51 (R.I. 1994).

the Cliff Walk. This instruction was given notwithstanding the trial justice's candid reflection in ruling on plaintiffs' renewed motion for judgment as a matter of law that, based on his "view of the evidence, there was an open issue * * * as to whether the State assumed a duty to maintain or warn visitors to the Cliff Walk."

Taking the evidence in the light most favorable to the state, there were numerous factual questions upon which reasonable jurors could disagree in determining whether the state breached this assumed duty. There was evidence introduced that other individuals may have used the path where Simcha fell without any difficulty, that, in fact, he himself may have even gone down the path once before, and that his accident could have occurred simply because he lost his footing. Additionally, there was evidence from plaintiffs' own witness that there was no way to ensure complete safety on the Cliff Walk and that any precautionary measures taken required a careful balancing of the potential risks and the public's right to use and enjoy the Cliff Walk. As such, there was no error in determining that the jury should resolve these factual disputes, and the trial justice properly denied plaintiffs' motion for judgment as a matter of law.

## 2. Motion for a New Trial

The plaintiffs contend that the trial justice committed reversible legal error by not properly following our decision in Berman I. We have already determined that the trial justice adhered to our earlier mandate. See Part III C, supra. Finding that the trial justice carried out his appropriate duties under Rule 59 of the Superior Court Rules of Civil Procedure, we likewise hold that the trial justice did not err in refusing to grant a new trial.

After carefully outlining plaintiffs' arguments, the trial justice articulated his basis for finding that there was sufficient competent evidence that justified the jury's verdict in light of the jury charge. The trial justice concluded that, at the end of the day, the state had only an

- 21 -

extremely limited role with respect to the Cliff Walk and that there was a "dearth of evidence" to support a finding of negligence in that limited role. The trial justice also discussed certain credibility and consistency issues relating to Simcha's testimony. Specifically, the trial justice noted that, while he was sympathetic to Simcha's situation, he did not find him to be credible with respect to his testimony regarding the ground crumbling beneath his feet. Additionally, the trial justice found that plaintiffs failed to demonstrate that, if fencing or other suggested precautionary measures had been put in place, such measures would have necessarily prevented this incident.

Thus, the trial justice properly denied plaintiffs' motion for a new trial.

### 3. Motion to Vacate Judgment

After the conclusion of the trial and entry of judgment in favor of defendant, plaintiffs moved to vacate the judgment. The plaintiffs produced evidence that the city had installed warning signs at entrances to the Cliff Walk and at the location of several paths leading to the water, including the location where Simcha had fallen. The plaintiffs allege that this evidence contradicted testimony by the state that it believed it would need the society's or any other abutting landowner's permission to do any type of work in the area.

A motion to vacate based on newly discovered evidence requires a showing that: "(1) the evidence is material enough that it probably would change the outcome of the proceedings and (2) 'the evidence was not discoverable at the time of the original hearing by the exercise of ordinary diligence.'" Malinou, 970 A.2d at 10 (quoting Medeiros v. Anthem Casualty Insurance Group, 822 A.2d 175, 178 (R.I. 2003)).

The trial justice determined that plaintiffs had not satisfied either ground. He found that plaintiffs could have discovered whether any entity needed the society's or another abutting

landowner's permission by questioning or deposing such entity or person. Further, the trial justice reasoned that, even if such evidence could not have been timely discovered, it still probably would not have had an impact on the outcome of the trial. The trial justice noted that the signs were installed over a decade after Simcha's fall and that the signs were installed by the city, a completely different entity from defendant.

Accordingly, we are satisfied that the trial justice did not abuse his discretion in denying the motion to vacate on grounds of newly discovered evidence. See Medeiros, 822 A.2d at 178 (holding that failure of party seeking vacation of judgment to interview a witness may demonstrate lack of due diligence).

The plaintiffs' other reasons for seeking a vacation of judgment fare no better. The plaintiffs assert that the judgment should be vacated pursuant to Rule 60(b)(3) due to "fraud * * *, misrepresentation, or other misconduct" on the part of the state. The plaintiffs contend that the state's position during trial was that it did not have the authority to install fencing or signs along the Cliff Walk and that the installation of signs by the city after the trial is indicative of fraud or a misrepresentation. The trial justice determined that evidence the city installed signs at the location where Simcha fell had no bearing on the state's actual or perceived ability to install signs at the time of the accident.[11]

For the foregoing reasons, we cannot say that the trial justice abused his discretion in refusing to grant a new trial or to vacate judgment based on the grounds alleged by plaintiffs.

---

[11] The plaintiffs also argued that the judgment should be vacated pursuant to Rule 60(b)(6) of the Superior Court Rules of Civil Procedure, which justifies relief for "any other reason." The trial justice correctly acknowledged that this clause is to be invoked "only in unique circumstances to prevent manifest injustice" and that such was not the case before him. Vitale v. Elliott, 120 R.I. 328, 332, 387 A.2d 1379, 1382 (1978). We find no error in that determination.

# G

## The State's Alleged Errors

Although it was found to be not negligent by a jury after a trial on the merits, the state has filed a cross-appeal, assigning error to certain rulings of the trial justice. In particular, the state argues the following: (1) plaintiffs failed to establish a prima facie case because of a lack of expert testimony; (2) plaintiffs failed to establish predicate facts indicating that the state owed plaintiffs a duty; (3) the public duty doctrine shielded the state from liability; and (4) the state was entitled to immunity under the RUS.

Generally, a party that has received a completely favorable jury verdict "cannot be said to be aggrieved by any of the alleged erroneous rulings" of a trial justice. Wallworth v. United Electric Railways Co., 51 R.I. 463, 464, 155 A. 402, 402 (1931). The state argues, however, that this case should never have been submitted to a jury for myriad reasons in the first place. Nevertheless, in light of our determination that the jury verdict in favor of defendant should stand, we decline the state's invitation to opine further. See Furlan v. Farrar, 982 A.2d 581, 585 (R.I. 2009).

We recognize, as did the trial justice, that our decision in Berman I is not without its critics. See Berman I, 991 A.2d at 1054-56 (Suttell, C.J., with whom Robinson, J., joins concurring in part and dissenting in part); Joshua Dunn, Note, Justice for All (The Wrong Reasons): The Flaws and Fallout of Berman v. Sitrin, 16 Roger Williams U. L. Rev. 305 (2011). However, we also recognize the principle that "[d]iscretion is often the better part of valor, and courts should not rush to decide unsettled legal issues that can easily be avoided." United States v. Gonzalez, 736 F.3d 40, 40 (1st Cir. 2013), cert. denied, 134 S. Ct. 1012 (2014); see PDK Laboratories Inc. v. United States Drug Enforcement Administration, 362 F.3d 786, 799 (D.C.

Cir. 2004) (Roberts, J. concurring) (stating that "the cardinal principle of judicial restraint" is that "if it is not necessary to decide more, it is necessary not to decide more"). Affirming the jury verdict in favor of the defendant fully disposes of this case. Thus, on this occasion, we do not revisit the wisdom of our prior decision and decline to speculate, in particular, as to whether the state should have been afforded immunity under the RUS or the public duty doctrine. Rather, "we leave [those] issue[s] for another day in another case." Calise, 900 A.2d at 1169.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record in this case shall be remanded to that court.



**TITLE OF CASE:**        Simcha Berman et al. v. Laura Sitrin, in her capacity as Finance Director for the City of Newport et al.

**CASE NO:**        No. 2011-266-Appeal.
No. 2012-77-Appeal.
No. 2012-116-Appeal.
(No. NC 03-402)

**COURT:**        Supreme Court

**DATE OPINION FILED:**   November 10, 2014

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

For Plaintiffs:  Ronald J. Resmini, Esq.
Kevin P. Gavin, Esq.

For Defendants:  James R. Lee
Department of Attorney General